617 So.2d 606 (1993)
TABCO EXPLORATION, INC., Plaintiff-Appellant,
v.
TADLOCK PIPE & EQUIPMENT, INC., Defendant-Appellee.
No. 92-532.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
Rehearing Denied May 25, 1993.
*607 Karl E. Boellert, Lake Charles, for Tabco Exploration Inc.
David Frank Dwight, Milo Addison Nickel, Jr., Lake Charles, for Tadlock Pipe & Equipment Inc.
Before STOKER, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
This is an appeal by Tabco Exploration, Inc. of a judgment finding it liable for half of the operation expenses incurred by intervenor, Tadlock Properties, Inc. The expenses were found to have been incurred by Tadlock Properties pursuant to an oral agreement with a partnership between Tabco and Tadlock Pipe & Equipment, Inc. For the following reasons, we amend and affirm.

FACTS
This suit arises out of an alleged partnership agreement formed between the president of Tabco, Tom A. Blankenship, and the president of Tadlock Pipe and Tadlock Properties, Robert Tadlock. In mid-January of 1989, Atlantic Richfield Corporation (ARCO), through its Director of Business Development, Kenneth Trahan, approached Robert Tadlock about purchasing the Buster-Baker Number 1 Well in East Texas. ARCO had been operating the well but could not afford to continue and was looking for someone to step in immediately to finish the job.
Tadlock examined technical data supplied by Trahan and decided the well looked promising. He then contacted Tom Blankenship for the alleged purpose of proposing a partnership in the exploration and production of oil or other minerals from the Buster-Baker well. After Blankenship examined the technical data, he agreed to participate, provided he could supply some pipe, his own workover rig and supervision. His oral agreement allegedly formed the partnership between Tabco and Tadlock Pipe.
Due to time constraints, the well was purchased by Robert Tadlock under the *608 name of Tadlock Properties. Tadlock Properties is a corporation created for the purpose of oil exploration. It is alleged that the partners agreed to have Tadlock Properties conduct all operations and pay all expenses. These expenses would be reimbursed at the completion of the well. It is further alleged that the partners were made aware by Trahan of the responsibility to plug, clean, and abandon the well in the event of a dry hole.
The transfer from ARCO to Tadlock Properties took place on January 26, 1989. Blankenship contacted Mike Caswell, a petroleum engineer who had been Blankenship's agent in Texas, and asked him to oversee drilling operations. Caswell began running casing on January 27, 1989. Shortly thereafter, drilling was completed and Tadlock informed Blankenship his workover rig would be needed. Blankenship stated he could not provide the workover rig at that time and would no longer be involved with the well.
As a result of Blankenship's actions, Tadlock Properties was forced to rent a workover rig. Shortly thereafter, it became apparent the well was a dry hole and further exploration would not be feasible. It was plugged and the site was cleaned and abandoned. No demand was made at that time by Tadlock Properties for any expenses owed by Tabco or Blankenship.
On September 9, 1989, Tabco sued Tadlock Pipe for the return or current market value of seventy-three sections of drill pipe. The drill pipe had allegedly been stored for Tabco at Tadlock Pipe's place of business.
Tadlock Pipe filed an answer and reconventional demand pleading the affirmative defenses of settlement, compromise, accord and satisfaction or set-off. It also requested damages as a result of Tabco breaching a partnership or joint venture formed for the purpose of exploring and producing oil and other petroleum products.
Tadlock Properties then intervened, suing Tabco and Blankenship for their half of the expenses incurred in operating the well. It asserted an agreement with the partnership between Tabco and Tadlock Pipe, that Tadlock Pipe had paid its half of the expenses and Tabco was responsible for the remainder. It further asserted the suit was on open account and requested attorney's fees.
The matter came to trial on June 26, 1990. It was taken under advisement and judgment was rendered on March 9, 1992. The trial judge found a partnership was created by an oral agreement between Tabco and Tadlock Pipe. He found the partners entered into an oral agreement to have Tadlock Properties control and operate the well and that they would supply equipment and supervision and share all profits and expenses.
The trial judge also found sufficient evidence of the expenses incurred by the partnership, which he determined was $120,138.18. He then cast Tabco in judgment for half, or $60,069.09. In his reasons for judgment, the trial judge correctly identified Tadlock Properties as the prevailing party but erroneously signed a judgment in favor of Tadlock Pipe & Equipment. We take notice of this error, despite its not being raised, and will amend the judgment to reflect the proper party.

ISSUES
Tabco raised several assignments of error from which we frame the following issues:
(1) Whether the trial judge committed manifest error in finding an oral partnership agreement, and an oral agreement between the partnership and Tadlock Properties for the purpose of operation and control of the Buster-Baker Well;
(2) Whether or not the oral agreement between the partnership and Tadlock Properties is valid; and,
(3) Whether an employee hired, paid and released by one corporation can be considered the employee of an oral partnership or another corporation.

LAW & ANALYSIS

A. Existence of Partnership
LSA-C.C. art. 2801 defines partnership:

*609 A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.
For the trial judge to have found an oral partnership agreement, he must have been satisfied the evidence met the foregoing criteria. These criteria require findings of fact. Findings of fact by a trial judge are to be given great discretion and will only be disturbed where they are manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial judge's fact finding duties were made easier due to certain sworn statements made by Blankenship which show his intent to form a partnership. On cross-examination, the following exchange took place:
Q: (Counsel for both Tadlock corporations)... [D]id you propose to them or did they propose to you that y'all go in as partners or joint adventurers or together or however you want to call it, on the Buster-Baker Well?
A: Yes, they offered me the opportunity to go in.
Q: And what was your response?
A: Provided I could use my equipment and I could do the supervision, I would be interested in it.
Blankenship also made the following statement regarding paying half of the purchase price of the well. He stated:
I told [Bob Tadlock] if I was able to participate in the deal by furnishing my rig and my equipment I'd be able to pay half of the costs.
Again, in direct examination by his own counsel, Blankenship made the following statement:
Q: Mr. Blankenship, when you discussed your interest in the Buster-Baker Well did you discuss any terms as to how that was to be structured and how you were to fit into the picture?
A: I discussed the equipment that I could furnish, which was the rig, and my supervision.
Q: Was that a condition of your agreement or
A: Yes, that was a condition because I was not able to hire someone else to do the work. I had toThat was theThe deal was that they were to furnish the tubulars and the casing and, if we did anything, and then I was to furnish the rigging and supervision, plus the tools I had, which I would offset the other.
Q: Did you communicate that to Bob Tadlock?
A: Yes.
Q: And did he, from what you could tell, understand these conditions?
A: Yes.
Q: Did you subsequently inform him that those conditions were not met?
A: I informed him that I would not be able to meet those conditions. (Emphasis added).
Lastly, Blankenship made the following remark during cross examination:
Q: And was there any specific conversation about what y'all were going to do or how long your workover rig was going to be unavailable?
A: I told [Bob Tadlock] I didn't know exactly how long it would be tied up. I recommended to him that he go find another partner, that due to or another participant in the well, someone that could help him, because my rig was not available and I could notI would not be able to be a participant in the well. (Emphasis added).
From the foregoing exchanges, it is obvious a partnership agreement was entered into for the purpose of drilling the Buster-Baker Well. He admits, under oath, that there was an agreement as to who would provide what in the way of equipment and supervision, there was an agreement to pay half the costs, an he even refers to himself as a partner. These statements by Blankenship clearly show a *610 partnership agreement was intended between the parties for the purpose of purchasing and drilling the Buster-Baker Well. His testimony is sufficient to stand as a judicial confession as contemplated by LSA-C.C. art. 1853.
Other evidence in the record supports the finding of the oral partnership agreement. Caswell and Trahan both testified they believed Blankenship and Tadlock were partners by the way they presented themselves. Further proof is Blankenship's active participation in the drilling process, e.g., supplying supervision by recommending and hiring Caswell, supplying his truck and driver to transport casingsome of which may or may not have belonged to himand obtaining credit for Tadlock Properties with oil field service companies.
In fact, Blankenship never unequivocally denied the partnership agreement. He relies instead on his selective memory and his own inability to supply the workover rig when it was needed to excuse him from any obligation the partnership may have incurred. He rationalized all of his statements regarding an agreement with Bob Tadlock by stating he was not allowed to use his workover rig on the well. Since this was an unfulfilled condition of his participation, it entitled him to withdraw from the project without financial obligations. Under the law, it is clear Blankenship may not avail himself of the non-occurrence of a condition of the agreement where he is responsible for preventing the occurrence. LSA-C.C. art. 1772.
Blankenship cannot claim that Tabco is excused from owing expenses by virtue of his withdrawal. A partner may withdraw from a partnership at any time where there is no set term provided he gives reasonable notice, is in good faith, and his withdrawal is not unfavorable to the partnership. LSA-C.C. art. 2822. It cannot be said that Blankenship's withdrawal was either in good faith or at a favorable time for the partnership. By his own admission, Blankenship has been in the oil business for nearly thirty years. He was well aware of the immediacy of the operations on Buster-Baker. Yet, after obligating himself to provide the workover rig, he failed to meet the obligation and relied on this failure to excuse himself from any further activities or obligations as partner. Unquestionably, his withdrawal was at a crucial time in the drilling process and, thus, untimely and unfavorable to Tadlock Pipe.
The record fully supports the finding of the trial judge that a partnership agreement existed between Tabco and Tadlock Pipe. It also serves to defeat any argument by Tabco that its agreement was somehow nullified by its inability to supply a workover rig or that its withdrawal from the partnership was valid. A partnership is the principal obligor, liable for its debts. The partners are individually liable for their virile share. LSA-C.C. art. 2817. If the operation agreement with Tadlock Properties proves to be valid, Tabco is responsible for half of the total expenses.

B. The Agreement With Tadlock Properties
Blankenship contends Tabco owes nothing to Tadlock Properties because the agreement creating the obligation was made orally and, because it involves immovable property, is invalid for lack of proper form. This contention is without merit. While ownership of an immovable by a partnership requires that the partnership agreement be in writing, ownership and transfer of ownership are not presently at issue.
The judgment against Tabco is for expenses it owes by virtue of its partnership agreement. The partnership agreed to pay expenses incurred by Tadlock Properties in conducting drilling operations on the Buster-Baker Well. Simplified even further, it is a question of whether a partner owes his share of expenses pursuant to an oral agreement between the partnership and a corporation.
The trial judge found that the oral agreement created an obligation owed by Tabco. The agreement did not consider ownership at all. It was a simple agreement of convenience providing an ease of operations for the partnership. The intervention requests *611 reimbursement. The record supports that the oral agreement was in effect.
Blankenship agreed to the partnership, agreed Tabco would share the costs, was aware that Tadlock Properties was operating the well, and even had his own man, Caswell, supervise the drilling operations. He was intimately linked to the agreement with Tadlock Properties and cannot now say he did not participate. Tadlock Pipe has paid its share and now Tabco, as a partner, must meet its obligation. There is no error in the trial judge's finding.
Furthermore, Blankenship's promises to Tadlock Pipe and Tadlock Properties meet the standards required for detrimental reliance set out in LSA-C.C. art. 1967.[1] Blankenship, according to all parties, was looked to for advice and guidance by the younger, less experienced Tadlock brothers. He entered into an agreement with them, promising to pay half of the costs provided certain conditions were met. Not only were the conditions welcomed, they were a necessary part of the drilling operation upon which the parties relied. There was a reasonable belief on the part of both Tadlock Pipe and Tadlock Properties that Blankenship would make good on his promise. He performed certain duties indicating his willingness to participate and asserted the strength of his word as sufficient to create an obligation on his part. Ultimately, however, he backed out and left Tadlock Pipe and Tadlock Properties with expenses incurred under the belief that they would be shared with Tabco. Considering the evidence and testimony in the record, we can say such a belief was reasonable and relied upon to their detriment.

C. Employment Status
Tabco raises an issue regarding the trial judge's finding Caswell an employee of Tabco when he was paid and released by Tadlock Properties. This issue is irrelevant to the resolution of this appeal. The trial judge stated that Blankenship "furnished his own consultant to oversee the day to day operations at the well." This brief statement is hardly conclusive of Caswell's employment status and was offered merely for the purpose of showing how closely Blankenship worked with the operation. We find no error in this ruling.

D. Attorney's Fees
In brief, Tadlock Properties requests attorney's fees from this court. It states that its intervention is a suit on an open account allowing them attorney's fees. LSA-C.Civ.P. art. 2133 requires an appellee who seeks to have a judgment modified or revised on appeal to file an answer to the appeal stating the relief desired. Tadlock Properties failed to file an answer to this appeal, and thus its request is not properly before this court and will not be considered.

E. Amending the Judgment
The judgment as signed is in error. It renders judgment in favor of Tadlock Pipe & Equipment when it should have been in favor of Tadlock Properties on its petition for intervention. We take note of this obvious error, and in the interest of judicial economy and under authority of LSA-C.Civ.P. art. 2164, we amend the judgment to read the following:
IT IS ORDERED, ADJUDGED AND DECREED that judgment be and the same is hereby rendered in favor of TADLOCK PROPERTIES, INC. and against TABCO EXPLORATION, INC. in the total amount of SIXTY THOUSAND SIXTY-NINE AND 09/100 ($60,069.09) DOLLARS, with legal interest from the date of judicial demand until paid.

CONCLUSION
For the foregoing reasons, the judgment against Tabco Exploration, Inc. is amended to reflect the proper prevailing party, Tadlock Properties, Inc., and affirmed as *612 amended. The costs of this appeal are charged to Tabco Exploration, Inc.
AMENDED AND AFFIRMED.
NOTES
[1] LSA-C.C. art. 1967 provides in pertinent part:

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying....