878 So.2d 665 (2004)
COFFEE BAY INVESTORS, L.L.C.
v.
W.O.G.C. COMPANY.
No. 2003 CA 0406.
Court of Appeal of Louisiana, First Circuit.
April 2, 2004.
Writ Denied June 25, 2004.
*667 T. Kenneth Watkins, Ann M. Barker, Houma, Counsel for Plaintiff/Appellee Coffee Bay Investors, L.L.C.
Jude C. Bursavich, Linton Morgan, Michael P. Fruge, Baton Rouge, Counsel for Defendants/Appellants W.O.G.C. Company.
Before: FOIL, FITZSIMMONS, GAIDRY, McDONALD, and McCLENDON, JJ.
GAIDRY, J.
This matter involves appeals from two partial summary judgments in favor of the plaintiff-appellee, Coffee Bay Investors, L.L.C. (Coffee Bay), brought by the defendants-appellants, W.O.G.C. Company (WOGC), Richard P. Watson (Watson), Watson Energy, Inc. (WEI), and Watson Energy, L.L.C. (WEL), arising from an unsuccessful joint venture to develop an oil and gas prospect. For the following reasons, we reverse the partial summary judgments, and remand this matter to the trial court.

FACTS AND PRIOR PROCEEDINGS
On July 6, 1998, following earlier negotiations, WOGC, a Louisiana corporation, and Coffee Bay, a Louisiana limited liability company, entered into an operating agreement relating to the exploration and development of a mineral rights prospect in Lafourche Parish. Under the terms of the operating agreement, WOGC was designated the "operator" and Coffee Bay the "non-operator." As operator, WOGC agreed to commence the drilling of an initial well by September 1, 1998.
On August 15, 1998, Coffee Bay agreed in a separate written agreement to pay WOGC the sum of $171,185.16, in consideration of which WOGC agreed to assign to Coffee Bay an undivided 50% interest in its oil and gas leases affecting acreage on the Coffee Bay well prospect (the Grandison lease), as well as an undivided 50% interest in WOGC's rights based upon a farmout agreement with Louisiana Land and Exploration Company (the LL & E farmout).
The August 15, 1998 agreement incorporated the terms of the prior operating agreement by reference, and further obligated the parties to share the expenses relating to the development of the prospect. The assignment of the interest in the Grandison lease was to be made within three days of the receipt of Coffee Bay's payment, while the assignment of the interest in the LL & E farmout was to be made "when practical [sic]."
It is undisputed that following Coffee Bay's payment of the specified sum, WOGC failed to deliver the assignments of interests and that Coffee Bay did not make demand upon WOGC or formally put it in default prior to filing suit on the agreement. It is likewise undisputed that the initial well was not drilled, and that the development of the prospect failed. The reasons for the failure, however, are vigorously disputed by the parties.
In its original petition, filed on May 27, 1999, Coffee Bay sued WOGC, alleging that WOGC's failure to deliver the assignment of the 50% interests in the leases at issue constituted a "failure of consideration," entitling it to rescission of the agreement and the return of its initial contribution of $171,085.16.
*668 WOGC answered the petition, denying liability and asserting a reconventional demand for the balance of Coffee Bay's share of the unpaid costs claimed to be due under the agreement.
On January 21, 2000, Coffee Bay filed an amended petition, adding Watson, WEI, and WEL as new defendants. It also added allegations supporting alternate theories of recovery based upon negligence, willful misconduct, and fraud, as well as violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq., and the Louisiana Blue Sky Law, La. R.S. 51:701, et seq.
WOGC answered the amended petition, denying all allegations, and the new defendants, Watson, WEI, and WEL, jointly filed a separate answer, likewise denying all allegations.
On July 27, 2000, Coffee Bay filed its first motion for partial summary judgment, with an "incorporated memorandum" in the body of the motion itself. In that motion, Coffee Bay expressly limited its claim for relief to "the issue of whether or not the failure of WOGC to deliver assignment of certain leasehold and farmout interests ... constitutes a failure of consideration which entitles plaintiff to judgment against WOGC." It further expressly stated that for purposes of that motion, "motivation is not at issue," and that its fraud claims were not before the trial court for determination.[1]
The motion was heard on August 25, 2000, and the trial court rendered summary judgment in Coffee Bay's favor on September 28, 2000, awarding it recovery of its monetary contribution of $178,185.16, with legal interest and court costs. In its written reasons for judgment, the trial court based its judgment on the finding that WOGC's failure to deliver the assignments of interests was a material breach of the agreement.
On February 27, 2002, Coffee Bay filed its second motion for partial summary judgment and "incorporated memorandum," seeking judgment against Watson, WEI, and WEL as "alter egos" of WOGC for purposes of imposing liability upon them for the prior judgment against WOGC.
The second motion for summary judgment was heard on April 26, 2002. On June 21, 2002, the trial court granted the motion, rendering judgment against Watson, WEI, and WEL, holding them liable for the same debt represented by the first summary judgment in favor of Coffee Bay.
Through two "revised judgments," the trial court certified both partial summary judgments as final and appealable on July 29, 2002.[2] The defendants cast in judgment now appeal both judgments.

*669 STANDARD OF REVIEW
The judgments from which this appeal is taken are partial summary judgments. Accordingly, our review must be a de novo review based upon the evidence presented in the trial court, using the same criteria used by the trial court in deciding whether summary judgment is appropriate. Simmons v. Berry, 98-0660, p. 4 (La.App. 1st Cir.12/22/00), 779 So.2d 910, 913-14.

LAW AND ANALYSIS
The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The mover has the burden of proof that he is entitled to summary judgment. If the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of one or more essential elements of his opponent's claim, action, or defense. La. C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2); Simmons, 98-0660 at p. 4, 779 So.2d at 914. It is implicit from the codal language, however, that if the mover would also bear the burden of proof at trial on the matter at issue in his motion, he must negate all essential elements of the adverse party's claim, action, or defense, and the burden does not shift to the adverse party.
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.

JOINT VENTURE
In order to determine whether there was a failure of cause warranting rescission of the contract, the nature of the contract must first be considered. Although Coffee Bay attempts to characterize the agreement as an "agreement to invest," and the agreement by its express terms disavows the parties' intent to create either a partnership or a joint venture, it is plain that it in fact established a joint venture under Louisiana law, a fact conceded by WOGC.[3]
*670 A joint venture has been defined as "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 19, 262 So.2d 350, 355 (1972), citing Daily States Publishing Company v. Uhalt, 169 La. 893, 901, 126 So. 228, 231 (1930). Generally, the object and the motive behind a joint venture are the anticipated profits derived from a specific business enterprise. See Hayes v. Muller, 245 La. 356, 367, 158 So.2d 191, 195 (1963); Williamson v. Roberts, 103 So.2d 499, 504 (La.App. 2nd Cir.1958). The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint venture is a question of law. Grand Isle Campsites, 262 La. at 24, 262 So.2d at 357.
The essential elements of a joint venture are generally the same as those of partnership, i.e., two or more parties combining their property, labor, skill, etc., in the conduct of a venture for joint profit, with each having some right of control. Cajun Electric Power Cooperative, Inc. v. McNamara, 452 So.2d 212, 215 (La.App. 1st Cir.1984), writ denied, 458 So.2d 123 (La.1984). Accordingly, joint ventures are generally treated by our law as a species of partnership, and governed by the law of partnerships. Id.[4] For example, there is a fiduciary duty between members of a joint venture similar to that which exists between partners in a partnership. Sutton v. Fleming, 602 So.2d 228, 230 (La.App. 3rd Cir.1992).
Louisiana Civil Code article 2801 defines a partnership as follows:
A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.
The requisite criteria for the existence of a joint venture (and a partnership) have been defined as follows:
(1) A contract between two or more persons;
(2) A juridical entity or person is established;
(3) Contribution by all parties of either efforts or resources;
(4) The contribution must be in determinate proportions;
(5) There must be joint effort;
(6) There must be a mutual risk vis-a-vis losses;
(7) There must be a sharing of profits.
Cajun Electric, 452 So.2d at 215.
These criteria require findings of fact. Tabco Exploration, Inc. v. Tadlock Pipe & Equipment, Inc., 617 So.2d 606, 609 (La.App. 3rd Cir.), writ denied, 625 So.2d 1057 (La.1993). Our de novo review of the evidence in the record relating to the first motion for summary judgment clearly establishes that the criteria are met, and that the agreement at issue was a joint venture.

*671 FAILURE OF CONSIDERATION OR CAUSE

Louisiana Civil Code article 1967 defines "cause" as "the reason why a party obligates himself." An obligation may be valid even though the cause is not expressed. La. C.C. art. 1969. The stated cause in a contract is not necessarily conclusive as to the actual cause; an obligation may still be enforceable even if the expressed cause is not the actual cause. See La. C.C. art. 1970.
A contract may be rescinded based upon error. But La. C.C. art. 1949 provides that "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." One of the source provisions of article 1949, La. C.C. art. 1825 (1870), described the cause upon which rescission may be sought as the "principal cause, when there are several."[5] Error as to a subsidiary motive has no effect on the validity of a contract. Marcello v. Bussiere, 284 So.2d 892, 895 (La.1973). As the 1984 revision of the Louisiana Civil Code did not change the law in this respect, the earlier jurisprudence relating to "principal" and "subsidiary" causes retains its relevance. Even after the enactment of present article 1949, courts have continued to speak of the requisite error for rescission in terms of error as to the "principal cause." See Baro Controls, Inc. v. Prejean, 634 So.2d 46, 48 (La.App. 1st Cir.1994).
Coffee Bay contends that because the assignment of a 50% interest in the leases and the farmout agreement was the "literal and stated consideration" for its initial monetary contribution, this court need look no further as to the parties' intent. We must disagree with this simplistic view. Coffee Bay cites no codal or jurisprudential authority in support of "failure of consideration" as its theory of the case. The "cause" or reason for Coffee Bay entering into the agreement with WOGC was clearly not to obtain a written assignment of a 50% interest in the undeveloped Grandison lease (only part of the entire prospect), or written assignments relating to both the Grandison lease and the LL & E farmout. Rather, the primary reason was to "participate in any production from the prospect," which is conceded by Coffee Bay to be the ultimate reason why it claims the assignments were needed.[6] The anticipated financial profit corresponds to the essential element of pecuniary gain inherent in a joint venture. This reason constitutes the "cause," properly speaking, or "consideration" for purposes of determining whether La. C.C. art. 1949's provisions support a claim for rescission. The assignments of interest were merely a means to the ultimate end or "cause." Thus, the joint venture is not invalid for failure of cause. See Shields v. Ponsaa, 01-1283, pp. 3-4 (La.App. 5th Cir.2/26/02), 811 So.2d 1058, 1060; Garner v. Hoffman, 93-0155, p. 37 (La.App. 4th Cir.5/23/94), 638 So.2d 324, 342, writ denied, 94-2109 (La.11/11/94), 644 So.2d 1068. We accordingly reverse the first partial summary judgment.
Our conclusion above is reinforced by pertinent language in the case of Hayes v. Muller, 245 La. 356, 158 So.2d 191. *672 There, the two plaintiffs claimed that they and the defendant entered into a verbal contract of joint venture for the purchase of oil and gas leases in a certain area as to which one of the plaintiffs had valuable confidential information. Each party agreed to contribute equal capital for the purchases and to share equally in the costs and profits. The defendant acquired a lease in his name only, allegedly based upon the information provided by the insider plaintiff. The defendant sold that lease for a large sum, and the plaintiffs sued for an accounting of the sale profits for their alleged shares. Although the supreme court on rehearing held that the joint venture was unenforceable since it related to immovable property and was not in writing, the following language from its original opinion is illuminating on the issue of cause, albeit in an indirect manner:
This suit has not as its object the assertion of an interest in an oil and gas lease, nor does it have as its object an attack upon the title to such a lease.... [Plaintiffs'] success is not dependent upon proof that they had an interest in the [lease] in the sense that they had title thereto. Success in their cause depends upon whether they can prove that there was a joint adventure and that as a result thereof profits were derived which were contemplated to be divided among the joint adventurers.... [J]oint adventurers do not have to be co-owners of property used in the business of joint adventure; the property used in the joint adventure may be owned by only one of the joint adventurers and its use only devoted to the purposes of the joint adventure. [Citation omitted.]
* * *
[T]hat [defendant] did own that lease relates only collaterally to the right to recover a part of the profits from the contract of joint adventure.
* * *
[Plaintiffs'] claim is for money profits derived from the joint adventure, from whatever source derived consonant with the object of the joint adventure, which was an enterprise for profits to be derived from oil and gas leases and royalties brought about by pooling of their knowledge, know-how, and capital. What plaintiffs have set forth in their petition is that they are claiming their share of the profits from the [lease] not by virtue of any interest in the title to that lease, but by virtue of their joint adventure agreement.
Hayes, 245 La. at 368-69, 370, 372, 158 So.2d at 195, 196. (Our emphasis.)
In its petition, as amended, Coffee Bay sets forth alternate theories of recovery against WOGC based upon fraud and breach of fiduciary duty, among others. Because of the limited scope of the first motion for partial summary judgment, our ruling thereon is limited to the theory of failure of cause only, and is not intended to express any opinion as to the merits of Coffee Bay's other theories of recovery against WOGC, which Coffee Bay expressly excluded from consideration. Accordingly, although the first summary judgment in Coffee Bay's favor must be reversed, our ruling does not preclude its right to seek recovery based upon those alternate theories following remand.

SINGLE BUSINESS VENTURE AND PIERCING THE CORPORATE VEIL
Unlike its first motion, Coffee Bay's second motion for partial summary judgment was not limited in scope to a particular issue or theory of recovery under La. C.C.P. art. 966(E). Rather, it was predicated upon the validity of the first judgment against WOGC, and sought to extend *673 WOGC's liability to its alleged alter egos, WEI and WEL, as a "single business enterprise," and to Watson personally as their officer and shareholder by virtue of the doctrine of "piercing the corporate veil."
The extensive facts put forth by Coffee Bay are admittedly strongly suggestive of the possibility of breach of fiduciary duty, fraud, and conduct warranting application of the doctrines of "single business enterprise" and "piercing the corporate veil." But because the summary judgment holding WOGC liable has been reversed, there remain genuine issues of material fact as to WOGC's ultimate liability under the alternate theories of recovery advanced by Coffee Bay. A decision on the issues presented in the context of the second motion would in effect result in an advisory opinion having no practical effect if the merits of Coffee Bay's claims against WOGC are determined adversely to Coffee Bay. See, e.g., Bertucci v. McIntire, 94-412, pp. 3-4 (La.App. 5th Cir.12/14/94), 648 So.2d 956, 958. It is well settled that courts will not render advisory opinions as to abstract, hypothetical, or moot controversies, and that cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. Robinson v. Cain, 01-1910, p. 4 (La.App. 1st Cir.6/21/02), 822 So.2d 100, 102. The determination of the issues raised by the second motion is clearly premature, and those issues are not ripe for decision given this case's present posture. Accordingly, we reverse the second partial summary judgment.

DECREE
The partial summary judgments of September 28, 2000, and June 21, 2002, are reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed to the plaintiff/appellee, Coffee Bay Investors, L.L.C.
REVERSED AND REMANDED.
FITZSIMMONS, J., dissents and assigns reasons.
MCDONALD, J., dissents with reasons assigned by Judge FITZSIMMONS.
FITZSIMMONS, Judge, dissenting with reasons.
I respectfully dissent from this court's reversal of the trial court's grant of summary judgment in favor of Coffee Bay Investors, Inc. (Coffee Bay). Coffee Bay paid the sum of $171,185.16 to W.O.G.C. Company (WOGC) for the stated consideration of an undivided 50% interest in WOGC's oil and gas leases and 50% of WOGC's farmout agreement rights. The majority rejects this delineated purpose as constituting the primary reason or cause for Coffee Bay's entering into the agreement. Instead, it construes the primary purpose of the agreement to equal Coffee Bay's entitlement to "participate in any production from the prospect."
It is respectfully submitted that the majority's distinction between Coffee Bay's interest in the leasehold rights and Coffee Bay's rights to production constitutes a distinction without a difference. The facts and legal precepts surrounding the instant case differ from the dicta enunciated in Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963). In Hayes, the court distinguished a leasehold title to property from a joint venture to participate in the oil and gas business. Coffee Bay's 50% delineated interest in WOGC's oil and gas leases and rights in a farmout agreement form the very legal authority by which Coffee Bay would be entitled to participate in production. A 50% interest in the ventures conveys a right to 50% of the production from *674 those prospective ventures, unless otherwise specifically agreed.
For these reasons, I would affirm the grant of summary judgment in favor of Coffee Bay.
NOTES
[1] Louisiana Code of Civil Procedure article 966(E) provides that "[a] summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case."
[2] See Fraternal Order of Police v. City of New Orleans, 02-1801 (La.11/8/02), 831 So.2d 897. As this action was filed prior to January 1, 2000, this appeal is governed by the former version of La. C.C.P. art. 1915, prior to the 1999 amendment which established its current language. Arguably, the first summary judgment could be viewed as appealable without the need for certification, as the former version of article 1915(A)(3) expressly made partial summary judgments, including "issue" summary judgments under La. C.C.P. art. 966(E), final and appealable without the trial court's certification or the parties' agreement required under former La. C.C.P. art. 1915(B). Such a conclusion would render the appeal of the first summary judgment by WOGC untimely. But the better view is clearly to treat the appeal as timely, since the former version of La. C.C.P. art. 1915(B) literally stated that a judgment as to less than all of the parties required certification, and the supreme court in Shell Pipeline Corporation v. Kennedy, 00-3207, p. 5 (La.10/16/01), 799 So.2d 475, 478, expressly took note of the "confusion in the law" on this issue, and held the former article's language to be ambiguous. Unless the ground urged for dismissal is free from doubt, an appeal should be maintained. Id. At the time the first motion for summary judgment was determined, the confusion in interpretation still existed, and the Shell Pipeline opinion had not been rendered. Accordingly, we find WOGC's appeal of the first summary judgment to be timely.
[3] The contractual language expressing the parties' supposed intent not to create a partnership or joint venture was obviously intended to avoid the designation of the enterprise as a partnership for federal and state income tax purposes only. See, e.g., La. R.S. 47:220.3(A), and Cajun Electric Power Cooperative, Inc. v. McNamara, 452 So.2d 212, 216 (La.App. 1st Cir.), writ denied, 458 So.2d 123 (La.1984), involving a similar disclaimer by the parties of joint venture status for state sales tax purposes.
[4] The principal difference between a partnership and a joint venture recognized by the jurisprudence is that a partnership is ordinarily formed for the transaction of a general business of a particular kind, while a joint venture is usually limited to a single transaction. Daily States Publishing Company v. Uhalt, supra.
[5] From the standpoint of correct legal theory, the expression "principal cause" is a redundancy. See La. C.C. art. 1949, Comment (e).
[6] Coffee Bay summarizes its position on this issue or theory of its case in its brief as follows: "It is only through assignment of the leases that [Coffee Bay] could secure its right to participate in any production from the project."