STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-191


JIMMIE W. BELGARD

VERSUS

MANCHAC TECHNOLOGIES, LLC


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 238,071
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


AFFIRMED.


John W. Munsterman
P. O. Box 1848
Alexandria, LA 71309-1848
(318) 445-6111
COUNSEL FOR DEFENDANT/APPELLEE:
       IWMM, LLC

**Mary Olive Pierson**
**P. O. Box 14647**
**Baton Rouge, LA 70898-4647**
**(225) 927-6765**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Manchac Technologies, LLC**
 **Randall Murphy**
 **Monroe Milton**

**Charles David Elliott**
**Vilar & Elliott**
**P. O. Box 12730**
**Alexandria, LA 71315-2730**
**(318) 442-9533**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **Jimmie W. Belgard**

**James G. Theus, Jr.**
**Gold, Weems, Bruser, Sues, & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **Manchac Technologies, LLC**

**EZELL, Judge.**

In this matter, Jimmie Belgard appeals the decision of the trial court granting the motion for summary judgment of Manchac Technologies, LLC, two of its managers, and IWMM, LLC (hereinafter collectively referred to as Manchac). For the following reasons, we affirm the decision of the trial court.

The facts of this case were well described by the trial court as follows:

> Manchac, a Louisiana limited liability company, was organized on March 18, 2005, by Randall W. Murphy, Monroe T. Milton and Jimmie W. Belgard (the founders), for the purpose of developing a device for the packing of pharmaceuticals in mass quantities. The founders were each issued one-third of the total membership interests in Manchac. They did not pay cash for their membership interest but rather contributed what they termed as intellectual property and prior services. The three members were at will employees of Manchac and paid a fixed salary. Mr. Belgard is no longer employed by Manchac.

> The founders, recognizing their need for capital[,] amended their operating agreement which allowed Manchac to raise capital by selling membership interest in the company. It provided that if new shares were to be sold before December 31, 2008 it would be only the founders' shares that would be diluted. In other words[,] if Manchac sold 3% of its shares to A then later sold 7% to B, the founders then would each own 30% of Manchac; if afterwards, but before December 31, 2008 Manchac sold 30% to C then each founders' ownership percentage would be reduced by 10% which would leave each founder with a 20% membership interest; A and B's percentage would not change. In 2006 and 2007 the LLC had its first offering, referred to as Round A.

> In 2008 Manchac needed additional capital and again offered to sell membership interest, which was referred to as Round B. Round B did not raise enough capital; however a group of investors, in exchange for 24% of ownership in Manchac agreed to guarantee a line of credit up to $1.8 million. This group formed IWMM L.L.C., on December 17, 2008. On December 30, 2008, IWMM agreed to guarantee a line of credit in favor of Manchac for $1.8 million. This resulted in the transfer of 24% membership interest in Manchac to IWMM. This 24% interest was transferred from the founders' interest to IWMM; 8% of this amount came from Mr. Belgard's ownership interest.

In his petition, Mr. Belgard sought to have the trial court declare that 24% membership interest in Manchac was illegally transferred to IWMM and that his shares were, therefore, improperly diluted. Manchac countered that the transfer to

IWMM was appropriate and that Mr. Belgard's shares were properly diluted. Both Mr. Belgard and Manchac asserted motions for summary judgment, and the trial court ruled in favor of Manchac, dismissing Mr. Belgard's claims. From that decision, Mr. Belgard appeals.

Mr. Belgard asserts four assignments of error on appeal. He claims that the trial court erred in finding that the Subscription Agreement was ambiguous; that the trial court erred in holding that IWMM "paid" for the 24% membership interest on December 30, 2008; that the trial court erred in dismissing his claims against the managers of Manchac; and that the trial court erred in dismissing his claims which were not addressed by either party in the cross motions for summary judgment. Because Mr. Belgard's first three assignments of error all deal with the validity of the transfer of the contested membership interest, we will address them together.

Louisiana Code of Civil Procedure Article 966(B) provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. The Louisiana Supreme Court discussed the standard applicable to appellate review of summary judgments in *Robinson v. Heard,* 01-1697, pp. 3-4 (La. 2/26/02), 809 So.2d 943, 945:

> A reviewing court examines summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hospital, Inc.,* 93–2512 (La.7/5/94), 639 So.2d 730, 750. A reviewing court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Smith,* 639 So.2d at 750.

Here, the disputed language in the Subscription Agreement reads: "The Capital Commitment shall be paid upon execution and delivery of this Agreement by either (i)

2

delivery of a check made payable to 'Manchac Technologies, L.L.C.'; or (ii) delivery into the Company's account of other immediately available funds acceptable to the Company." Mr. Belgard's primary argument with regard to the validity of the transfers to IWMM rests upon the fact that it acquired the 24% ownership interests by credit transactions wherein IWMM promised to secure a $1.8 million line of credit in favor of Manchac in return for the membership interest, despite the language of the Subscription Agreement Mr. Belgard claims required cash or other immediate payment for the interests. Mr. Belgard further claims that the transfer of the membership interest was invalid on December 30, 2008, because no cash was exchanged on the date of transfer or because the line of credit offered in exchange was not completely set up, rendering the dilution of his founder's membership interest improper. In short, Mr. Belgard believes that the obligation to establish the line of credit was not sufficient consideration for the transfer to have been affected on December 30, 2008. We disagree.

Louisiana Revised Statutes 12:1301(3) states that a "'Capital contribution' means anything of value that a person contributes to the limited liability company as a prerequisite for, or in connection with, membership, including cash, property, services rendered, or a promissory note or other binding obligation to contribute cash or property or to perform services." Louisiana Revised Statutes 12:1321 reiterates that "[t]he contribution of a member to a limited liability company may take the form of cash, property, services rendered, or a promissory note or other binding obligation to contribute cash or property or to perform services."

On December 30, 2008, IWMM contractually bound itself to Manchac to provide a $1.8 million line of credit for Manchac's benefit, secured by the personal property of IWMM's members, in return for its membership interest. This obligation was real and became effective immediately when IWMM's agent signed the

3

Subscription agreement. Moreover, this form of consideration was clearly "acceptable to the Company" as required by the Subscription Agreement, as the terms of the transfer agreement were approved by a strong majority of the members in November 2008, before the transfer was effected. No member, not even Mr. Belgard, opposed a transfer of 24% membership interest in return for a $1.8 million line of credit. While IWMM did not pay cash for their acquired interests in Manchac, it did give valid consideration for its interests and this consideration was acceptable to Manchac as required by the Subscription Agreement. *See Egle v. Egle*, 06-1550 (La. App. 3 Cir. 6/27/07), 963 So.2d 454, *writ denied*, 07-1596 (La. 10/26/07), 966 So.2d 579; *Coffee Bay Investors, L.L.C. v. W.O.G.C. Co.,* 03-406 (La.App 1 Cir. 4/2/02), 878 So.2d 665, *writ denied*, 04-1084 (La. 6/25/04), 876 So.2d 838.

Additionally, even if consideration had not been sufficient under the language of the Subscription Agreement, Manchac's actions after the fact ratified the transfer, both implicitly and expressly.

> Generally, ratification may be implied from the acquiescence in, or recognition of, the act by the corporation, through its proper officer or agent . . . or from its accepting and retaining the benefits of the act . . . or from any other acts or conduct which reasonably tend to show an intention to adopt or affirm the act or contract, particularly where it appears that the corporation has repeatedly recognized and approved similar acts done by the officer or agent, provided at the time of such acts or conduct it has full knowledge of the material facts . . . and where the unauthorized act or contract is clearly beneficial to the corporation, a ratification may be implied from slight circumstances.

*Dunham-Pugh Co., Inc. v. Stephens*, 234 La. 218, 231-32, 99 So.2d 88, 93 (1958) (quoting 19 C.J.S Corporations § 1018, 495).

The line of credit was established and the members of IWMM placed their personal property as collateral for the debt. Manchac used the line of credit to operate its business. Manchac clearly accepted, received, and retained the full benefit of this arrangement and operated in accordance with it. Furthermore, if this implicit

4

ratification of the agreement were still not enough, the membership of Manchac overwhelmingly and explicitly ratified the transfer in October 2010 retroactive to December 30, 2008.

It is clear from the record before this court that the creation of an obligation to establish a $1.8 million line of credit was valid consideration for the transfer of 24% of the membership interest in Manchac. This obligation was effective on December 30, 2008, and the transfer of the membership interest was proper on that date as well. Consequently, Mr. Belgard's membership interest was properly diluted in accordance with Manchac's operating agreement. Because the transfer and dilution were proper, Mr. Belgard's claims against the managers of Manchac are clearly devoid of merit. There are no genuine issues of material fact as to these matters. Accordingly, the trial court's grant of Manchac's motion for summary judgment was proper.

Mr. Belgard further claims that the trial court erred in dismissing claims of his not addressed in the motions for summary judgment. He claims that the operating agreement did not allow for membership interests to be transferred in exchange for loan guarantees. In light of our above decision that the transfer was valid, we need not address this claim further.

Mr. Belgard additionally claims that the trial court erred in failing to address his assertion that the dilution of the founders' shares should be adjusted because one of the other founders, Monroe Milton, purchased an additional 0.5% membership interest in the company in a purchase subsequent to the establishment of the company and the founders' shares.

As noted above, in order to attract new investors, the three founders of Manchac agreed that any new membership interests issued by Manchac prior to December 31, 2008, would only dilute the membership interests of the original three

founders. This "Founders' Dilution Provision" is set forth in the Restated Operating Agreement in Section 3.5.3 which provides as follows (emphasis added):

> Notwithstanding any other provision of this Agreement to the contrary, *any new Membership Interests issued* by the Company prior to December 31, 2008, shall only dilute the Membership Interests of Monroe Milton, Randall Murphy and Jimmie Belgard, their successors, heirs and assigns. It is the intention of this Section 3.5.3 that the other Members' Membership Interests not be diluted by such issuances.

The record established that when Manchac was founded, the founders were each given one-third of the company's membership interest. Mr. Milton's additional 0.5% was purchased at a later time and, therefore, qualified as a "new Membership Interest" under Section 3.5.3 of the Restated Operating Agreement. There is nothing in the record which sets forth that his additional percentage should be diluted as if it were a founders' share. This assignment of error is so devoid of merit as to border on frivolity.

For the above reasons, the decision of the trial court is hereby affirmed. Costs of this appeal are assessed against Mr. Belgard.

**AFFIRMED.**