McDonald, j.
lain this case, the defendant, Paul C. Barranco, appealed a judgment rendered against him and in favor of the plaintiffs, John E. Brignac, Jr. and Joseph Fred Godchaux, Sr., awarding Mr. Brignac and Mr. Godchaux each one-third shares of the profits that the district court found resulted from a joint venture. After a thorough review, we affirm.
*90 PACTS AND PROCEDURAL HISTORY
On May 2, 2006, Mr. Barranco signed a purchase agreement for three apartment complexes, Greenwell Plaza Apartments, Magnolia Gardens Apartments, and Lone Oak Apartments, for $8,490,000.00, signing the purchase agreement as “Paul Barranco or assignees.” The price was $1,800,000.00 for the Lone Oak Apartments, $3,120,000.00 for the Greenwell Plaza Apartments, and $3,570,000.00 for the Magnolia Gardens Apartments. The act of sale had to be passed within 90 days. The apartment complexes, located in East Baton Rouge Parish, were owned by Dr. Richard M. Hill and Roy Schnebelen. Mr. Barranco attempted to secure financing to purchase the property on his own, but after approaching several banks, he was unsuccessful. Thus, Mr. Barranco could not finance the venture without taking on partners.
On June 3, 2005, Mr. Brignac, Mr. God-chaux, and Mr. Barranco had formed God-Brig-Bar, L.L.C. The members of God-Brig-Bar were PCB Investments, L.L.C., represented by Mr. Barranco, and God-Brig, L.L.C., represented by Mr. Brignac and Mr. Godchaux. Profits from God-Brig-Bar were to be distributed one-third to PCB Investments and two-thirds to God-Brig. Shortly before the formation of God-Brig-Bar, Mr. Barranco had submitted a bid on behalf of GodBrig-Bar, signed in his own name only, to acquire an apartment complex on Ned Drive in Baton Rouge, Louisiana. The three men were expecting a large profit from the sale of the Ned Drive apartment complex.
| ¡¡Mr. Barranco approached Mr. Brignac and Mr. Godchaux as potential partners in the purchase of the three apartment complexes. The profit from the Ned Drive apartment complex could be used as a down payment for the three apartment complexes, if needed. Mr. Brignac and Mr. Godchaux went to the apartments to inspect them.
On August 17, 2006, Mr. Brignac gave Mr. Barranco a $10,000.00 check that noted on the memo line that it was for a 1/3 interest in the Hill apartments. Mr. God-chaux gave Mr. Barranco a $10,000.00 on August 17, 2006 also, which noted on the memo line that it was for a 1/3 deposit on the Hill apartments.
Mr. Barranco deposited the checks. The original purchase agreement had nearly expired, and Mr. Brignac and Mr. Godchaux, who were long-term friends of Dr. Hill, assisted Mr. Barranco in getting an extension on the purchase agreement.[1] Three separate purchase agreements were signed by Mr. Barranco on July 26, 2006 (one for each apartment complex), and a $10,000.00 deposit was made on each. Each agreement was again signed as “Paul Barranco or assignees.” The purchase agreements were separated because environment regulations were going to delay the sale of the largest complex. The three purchase agreements provided that the sales had to be closed by August 31, 2006.
Mr. Barranco asked Mr. Brignac and Mr. Godchaux to send copies of their tax returns and financial statements to Ban-corpSouth for a possible loan to buy the three apartment complexes and they complied. Another extension was granted, again with the assistance of Mr. Brignac and Mr. Godchaux. On August 24, 2006, Mr. Barranco signed an additional extension for the three apartment complexes. The agreement provided that the sales had to be passed by November 1,2006.
*91 On September 26, 2006, Mr. Barranco told Mr. Brignac and Mr. Godchaux |4that Palisade Properties was interested in acquiring the purchase agreements on the three apartment complexes. Palisade Properties, a family-owned business, had money from real estate transactions that it needed to reinvest quickly in order to avoid expensive tax consequences. The assignment of the three apartment complex purchase agreements to Palisade Properties would result in a profit of $1,132,000.00. On October 2, 2006, Mr. Barranco signed a letter of intent with Palisade Properties to sell Palisade Properties the three purchase'agreements for the three apartment complexes. Mr, Brig-nac and Mr. Godchaux requested that the letter of intent be put in the name of God-Brig-Bar, but Mr. Barranco advised them that a change might scare off the potential investors. The owners of Palisade Properties were nervous about the purchase, due to the large size of their investment. On October 26, 2006, Mr. Barranco signed an assignment of the purchase agreements on the Lone Oak Apartments and Greenwell Plaza Apartments to Palisade Properties for $656,000.00.
On October 30, 2006, an additional extension was signed by Mr. Barranco for the largest apartment complex, Magnolia Gardens, which required a $50,000.00, nonrefundable deposit. The non-refundable deposit was paid by a check dated October 30, 2006, from the proceeds of the Ned Drive venture. The memo line read “DEPOSIT ON MAGNOLIA GARDENS.” The check was written by Mr. Barranco fr.óm the Gód-Brig-Bar checking account. On. November 3, 2006, Mr. Barranco and Palisade Properties executed an assignment of the purchase agreement for Magnolia Gardens Apartments for $476,000.00. Thereafter, on November 21, 2006, Mr. Barranco disbursed to Mr. Brignac and Mr. Godchaux each a check in the amount of $10,302.56, noting a return of their money with $302.56 in interest.
On November 22, 2006, Mr. Brignac, Mr. .Godchaux, and God-Brig filed suit against Mr.. Barranco asserting that they had entered a joint venture with Mr. IsBarranco to purchase Greenwell Plaza Apartments, Magnolia Gardens Apartments, and Lone Oak Apartments, using God-Brig-Bar. Mr. Brignac and Mr. God-chaux asserted, that they were instrumental in securing an extension of a purchase agreement in order for the parties to secure financing to complete the purchase of three apartment complexes, and that they each put up $10,000.00 for their respective one-third shares of the venture.
Mr. Brignac and Mr. Godchaux maintained that Mr. Barranco assigned his and their rights-to purchase the three apartment complexes to Palisade Properties for a net-gain of .$1,132,000.00. The plaintiffs asserted that- when they inquired about their disbursements from the sale, they were told by Mr. Barranco’s representative that the bank had a hold on the check for seven to ten days.
Mr. Brignac and Mr. Godchaux asserted that Mr. Barranco breached his fiduciary duty to them as members of the joint venture and as members of GodBrig-Bar by retaining a secret advantáge in connection with their common enterprise. Mr. Brignac and Mr. Godchaux maintained that they were each entitled to approximately $377,333.33, representing a total .award of $754,666.66, and they asked for legal interest and costs. The plaintiffs prayed for judgment in their favor and against Mr. Barranco.
On November 30, 2006, the plaintiffs filed a rule for preliminary injunction, asserting that: Mr. Barranco had retained their portion of the joint venture’s profits resulting from the sale of the purchase *92 agreement for the three apartment complexes; the parties had agreed on November 29, 2006, to put the disputed proceeds into escrow until December 15,2006; without further order of the court the funds would be released to Mr. Barranco on December 15, 2006; and that without an injunction requiring the funds to be retained in escrow until resolution of the matter, a judgment'in favor of the plaintiffs would likely be valueless and the plaintiffs would suffer irreparable harm. A hearing on the motion for preliminary | ^injunction was set for December 14; 2d06. The motion for preliminary injunction was apparently denied, although a written ruling was not found in the record- by this court.
> On February 21, 2007, Mr. Barranco filed a motion for summary judgment,-asserting the plaintiffs’ claims had no basis in law or fact, that there were no genuine issues of material fact, and that he was entitled to judgment as a matter of law. The plaintiffs filed an opposition to the motion for summary judgment. The district court denied Mr. Barranco’s motion for summary judgment on May 21, 2007. Mr, Barranco filed an application for supervisory writs with this court,[2] and on September 28, 2007, writs were. denied. Brignac v. Barranco, 2007-1308 (La.App. 1 (&. 9/28/07). On June 11, 2010, Mr. Barranco filed peremptory exceptions raising the objections of no right of action and no cause of action. The district court denied the peremptory exceptions raising the objections of no right of action, and no cause of action on July 2,2010.
There were delays throughout the case for various reasons, including withdrawals and substitutions of counsel, settlement negotiations, and a bankruptcy filing by Mr. Barranco that' stayed the proceedings. Eventually, the case proceeded to a trial on the merits on May 18, 2012. After the presentation of the plaintiffs’ case in chief, Mr. Barranco movéd for a directed verdict, which was taken under advisement by the district court.[3] Mr. Barranco’s motion for directed verdict was denied by the district court on November 20, 2012. The trial continued on September 6,2013, and afterward the district court took the matter under advisement.
|YOn February 10, 2014, the district court rendered judgment in favor of the plaintiffs,- awarding $354,693.00 in damages to Mr. Brignac and $354,693.00 in- damages to Mr. Godchaux.[4] In its written reasons for judgment, the district court found that the evidence supported the conclusion that the parties were engaged in a joint venture to purchase the three apartment complexes, that Mr. Barranco could not have purchased the three apartment complexes on his own, and thus, he sought out his business partners in God-Brig-Bar for the specific purpose of providing the financial backing for a real estate deal “of this magnitude.” The district court found that the real estate transaction would not have “survived” without the involvement of Mr.
*93 Brignac and Mr. Godehaux. Further, the district court found that while the original purchase agreement may have been signed by Mr. Barranco in his individual capacity, the extension and subsequent purchase agreements, which included rights of assignment, were done as an agent of God-.Brig-Bar and as a member of the joint venture.
Mr. Barranco appealed the judgment, and makes the following assignments of error.
1. The trial court allowed introduction of voluminous parol[] evidence in the' form of testimony and documents to prove an unenforceable verbal joint venture agreement existed and then held that' plaintiffs had established a right in the proceeds realized by the defendant from his interest in real estate created under his pre-unitten. purchase agreements. •
2. The court should have denied the introduction of such parol[ ] evidence , and should have dismissed plaintiffs case.' ■ .
STANDARD OF REVIEW
-An appellate court may not overturn a jury’s findings of fact absent manifest error, or unless,-a finding is clearly wrong. However, if upon review, we find that the trial court committed one or more [ ^evidentiary errors that interdict the fact-finding process, we are required to instead conduct a de novo review. As such, because a finding of an evidentiary error may affect the standard of review we should apply, we will first address the alleged evidentiary errors. Wright v. Bennett, 2004-1944 (La.App, 1 Cir. 9/28/05), 924 So.2d 178, 182. We note, however, that in regards to the defendants’ allegations of error as to whether the trial court improperly admitted or excluded certain,evidence, the -trial court is granted broad discretion in these rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Wright, 924 So.2d at 183, citing Turner v. Ostrowe, 2001-1935 (La.App. „ 1 Cir. 9/27/02), 828 So.2d 1212, .1216, writ denied, 2002-2940 (La.2/7/03), 836 So.2d 107.
CF Industries, Inc. v. Turner Indus. Services, Inc., 2011-0540, p. 3 (La.App. 1 Cir. 8/24/12), 2012 WL 3655247 (unpublished), writ denied, 2012-2160 (La.12/14/12), 104 So.3d 442.
DISCUSSION
In his assignments of error, Mr. Barranco maintains that the district court allowed “voluminous, parol evidence” to prove an unenforceable verbal joint venture agreement, and .that the district court should have denied the introduction of such , parol evidence and dismissed the case. Mr. Barranco does not describe exactly what evidence was introduced should not have been introduced. The testimony and documents entered into evidence by Mr. Brignac and Mr. Godehaux related to the existence of a limited liability company, God-Brig-Bar, and the joint ventures entered into by the parties.
Mr. Barranco relies upon cases holding that parol evidence cannot be used to vary the contents of a contract concerning immovable property. In particular, Mr. Bar-ranco relies upon Hayes v. Muller, 245 La. 356, 158 So.2d 191 • (La.1963) (on rehearing), a case in which only verbal evidence of a joint venture was introduced.
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead tomo absurd consequences, no further interpretation may be made in search of *94 thé parties’ intent. La. C.C. art. 2046. A sale or promise of sale of an |9immovable must be made by authentic act or by act under private signature, exeept as provided in Article 1839. La. C.C. art. 2440, The parol evidence rule has been applied by our courts not only in cases involving contracts which directly affect title to realty but also in others where the litigants merely sought to derive benefits growing out of verbal agreements relating to the sales of immovable property. Hayes, 158 So.2d at 198.
However, in this case, there is evidence of a written joint venture agreement. The $10,000.00 check written to Mr. Barranco by Mr. Godchaux, dated August 17, 2006, noted on the memo line that it was for “1/3 Deposit Dr. Hill.” The $10,000.00 check written to Mr. Barranco by Mr. Brignac, dated August 17, 2006, noted on the memo line that it was for “1/3 INTEREST/HILL APTS.” Mr. Barranco accepted the checks from Mr. Brignac and Mr. Godchaux as written and deposited them. When Mr. Barranco was questioned at trial as to why he took the $10,000.00 checks from Mr. Godchaux and Mr. Brignac and kept their money until November 21, 2006 if he thought they “had no deal”, he answered “I didn’t even think about it .,. I was so focused on trying to getting the deal done.” Further written evidence of the joint venture among the three men is the Articles of Incorporation for God-Brig-Bar signed by the parties on June 3, 2005, and the $50,000.00 check Mr. Barranco wrote on the God-Brig-Bar account on October 30, 2006, using the proceeds of the Ned Drive apartment venture as a deposit on the Magnolia Gardens Apartments.
The requisite criteria for the existence of a joint venture (and a partnership)' have been defined as follows:
(1) A contract between two or more per- ■ sons;
(2) ‘ A juridical entity or person is established;
(3) Contribution by all parties of either efforts or resources;
(4) The contribution must be in determinate proportions;
|ifl(5) There must be joint effort;
(6) There must be a mutual risk vis-a-vis losses;
(7) There must be a sharing of profits.
Cajun Electric, 452 So.2d [212] at 215 [La.App. 1 Cir.1984].
These criteria require findings of fact. Tabeo Exploration, Inc. v. Tadlock Pipe . & Equipment, Inc., 617 So.2d 606, 609 (La.App. 3rd Cir.), unit denied, 625 So.2d 1057 (La.1993).
Coffee Bay Investors, L.L.C. v. W.O.G.C. Co., 2003-0406 (La.App. 1 Cir. 4/2/04), 878 So.2d 665, 670, writ denied, 2004-1084 (La.6/25/04), 876 So.2d 838.
The relationship between joint ventur-ers, like that existing between partners, is fiduciary in character. See, Coffee Bay Investors, L.L.C. v. W.O.G.C. Co., 03-0406 (La.App. 1st Cir.04/02/04), 878 So.2d 665, at 669-670, writ denied, 04-1084 (La.06/25/04), 876 So.2d 838. A fiduciary obligation is imposed on all participants -of loyalty und the utmost good faith, fairness and hones[ty] in their dealings. The dual requirements of good faith between joint venturers and the principle that &■ joint venture contemplates a division of all the profits growing out of the transaction among all the venturers forbid one coventurer from acquiring and retaining for himself any private or secret advantage in connection with the common enterprise. See Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (La.1972).
*95 Riddle v. Simmons, 40,000 (La.App. 2 Cir. 2/16/06), 922 So.2d 1267, 1281, writ denied, 2006-0793 (La.6/2/06), 929 So.2d 1269.
A partner owes a fiduciary duty to the partnership and. to his partners under La. C.C. art. 2809, which provides that a partner may not conduct any áctivity for himself or on behalf of a third person that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does, he must account to the partnership and to his' partners for the resulting profits. Pursuant to La. C.C. art.-1757, obligations may arise directly from the ■ law. The fiduciary duty owed to a partner or a co-joint venturer is one such obligation. See Sutton v. Fleming, 602 So.2d 228 (La.App. 3d Cir.1992).
Riddle v. Simmons, 922 So.2d at 1282.
There were two permissible views of the evidence in this case. See Roseli v. ESCO, 549 So.2d 840, 844 (La.1989). Either the parties entered into a joint venture and agreed to share the profits made from the assignment of the three purchase agreements, or they did not. The district court found that the parties did Magree to enter into a joint partnership and share the profits made from the sale of the purchase agreements. When findings are based upon determinations regarding the credibility of witnesses; the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings. Rosell v. ESCO, 549 So.2d at 844.
This case is similar to Grand Isle Campsites Inc. v. Cheek, Inc., 262 La. 5, 262 So.2d 350 (La.1972). In that case, a corporation brought an action to recover a secret profit made in a real estate sale by one of its shareholders. Mr. Cheek, the shareholder, made a side deal to buy property on Grand Isle for $275,000.00, then turned around and sold it to the corporation for $400,000.00. The other shareholders in the corporation were led by Mr. Cheek to believe that he had an option to buy the property for $400,000.00 and that they were purchasing it directly from the original seller. They did not know that Mr. Cheek had bought it for himself at á lower price and then sold it to them for a profit.
The supreme court found that the deceptive actions of Mr. Cheek were a breach of the trust placed in him by his joint adventurers, and that he violated his fiduciary duties to them. The supreme court ruled in favor of the corporation and against Mr; .Cheek, awarding the corporation the amount of Mr. Check’s profit from the secret deal, $125,000.00. Grand Isle Campsites,- Inc., 262 So.2d at 358-359.
In this case, the evidence shows that Mr. Barranco discovered the opportunity to buy the apartment complexes, but could not finance it by himself. He brought the opportunity to buy the properties to Mr. Brignac and Mr. Godchaux, and the three pursued it as a common enterprisé of the entity God-BrigBar. Mr. Brignac and Mr. Godchaux proved* that they were instrumental in securing deadline extensions to purchase the three apartment complexes. Their testimony to that effect was confirmed by Dr. Hill’s testimony. Then the opportunity arose to assign the purchase agreements to Palisade- .-Properties and 112make an easier profit with less risk than actually buying the properties and manag-r irig .them. After the assignment of the purchase agreements went through, Mr. Barranco apparently decided he could have financed that deal on his own, and opted to treat Mr. Brignac añd Mr. Godchaux’s $10,000.00 deposits as loans to be repaid with interest. While Mr, Barranco testified that he was- not sure up until the closing with Palisade Properties whether he was going to be assigning the purchase agreements to Palisade Properties or buying the property to manage it, the com *96 mercial lender at BancorpSouth, Mark Bagwell, refuted that by testifying that it was clear before the closing that the purchase agreements would be assigned to Palisade Properties.
CONCLUSION
For the foregoing reasons, we find no manifest error in the district court determination that Mr. Barranco breached his fiduciary duties to Mr. Brignac and Mr. Godchaux. .
1 Therefore, the district court judgment, awarding damages of $354,693.00 to Mr. Brignac and $354,693.00 to Mn Godchaux, is affirmed. The costs of this appeal are assessed against appellant, Paul C. Bar-ranco. .
AFFIRMED.
HOLDRIDGE J., concurs.
CRAIN J, assigns additional reasons.

. Dr. Hill testified that he would not have granted the extensions if Mr. Brignac and Mr. Godchaux had not become involved in the project.

.' Mr. Barranco’s first application for writs was not considered due to his failure to comply .with the Uniform Rules of the Louisiana Courts of Appeal Rule 4-5(h). Brignac v. Barranco, 2007-1011 (La.App. 1 Cir. 7/10/07).

. The record was held open after the first day of trial for the purpose of obtaining a deposition from Mark Bagwell, a commercial lender for BancorpSouth who worked with Mr. Bar-ranco at the time these events transpired.

.While Mr, Brignac and' Mr.. Godchaux prayed for damages in the amount, of one-third each of the gross profits from the sales ' of three purchase agreements, the district court apparently awarded them each one-third of the net profits after real estate broker fees were deducted. The amount of the damage award has not been contested, thus we do not address it.