829 So.2d 1179 (2002)
Kenneth L. VENABLE and Donna Boulet Venable
v.
UNITED STATES FIRE INSURANCE COMPANY.
No. 02-505.
Court of Appeal of Louisiana, Third Circuit.
October 30, 2002.
*1180 Edward P. Lobman, Tara L. Mason, New Orleans, LA, for the Defendant/Appellant United States Fire Insurance Company.
Dorsey C. Martin, III, Baton Rouge, LA, for the Plaintiffs/Appellees Kenneth L. Venable and Donna Boulet Venable.
Court composed of NED E. DOUCET, JR., Chief Judge, MARC T. AMY and GLENN B. GREMILLION, Judges.
DOUCET, Chief Judge.
The Defendants, United States Fire Insurance Company (U.S. Fire), appeal a trial court judgment finding that it was liable for the negligent actions of its agent in failing to bind coverage on property damaged in a fire.
The Venables are commercial beekeepers. In 1994, the Venables contacted Roger Starks of the Howalt-McDowell Agency to obtain insurance coverage for his honey production business. Starks continued to fill the insurance needs of the Venables' honey production business from that time. Most requests for additional insurance and renewals were handled by phone calls with coverage being bound immediately and bills sent directly from the insurer at a later date. In approximately 1995, the Venables moved their business to a leased property at 12166 Atkinson Road in Crowley, Louisiana. Through Starks, they obtained insurance on the contents from the U.S. Fire. In 1999, the Venables bought the property they had previously leased. Immediately after the purchase, Mr. Venable called Starks requesting that insurance on the building itself be added to his coverage. Starks or a member of his staff faxed an application for insurance. Venable filled out the form and faxed it back. Mr. Venable testified at trial that he did not get anything back and assumed he was insured and would be billed later. Carol *1181 Larson testified first that the document filled out by the Venables was a request for a quote, that she later faxed the Venables a quote, and, because she did not receive a response, insurance was never bound. On September 11, 1999, a fire broke out at the Atkinson Road property resulting in damage of $60,000.00. U.S. Fire denied the claim for damage to the building asserting that no coverage was ever bound. The Venables filed this suit. After a trial on the merits, the trial court found that Starks, was an agent of U.S. Fire, and as a result U.S. Fire is responsible for Stark's negligent failure to follow through in obtaining insurance on the property. U.S. Fire appeals.

DID THE TRIAL COURT RENDER A JUDGMENT BEYOND THE PLEADINGS?
The Defendant argues that the judgment rendered by the trial court is null in that it granted relief not requested in the pleadings.
Louisiana Code of Civil Procedure article 862 provides that a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled. The court may not, however, decide controversies that the litigants have not raised or grant relief the parties have not demanded. Due process requires adequate notice to the parties of the matters that will be adjudicated.
Glover v. Medical Center of Baton Rouge, 97-1710, p. 3 (La.App. 1 Cir. 6/29/98); 713 So.2d 1261, 1262 (footnotes omitted).
In this case, the trial court determined that the issue of agency, had been adequately raised in the pleadings, as follows:
The defendant contends the plaintiffs have not asserted a cause of action in their petition regarding agency or vicarious liability. The court disagrees. In the plaintiffs' petition, Roger Starks is referred to as the defendant's agent, and under the liberal rules of pleading that exist in Louisiana, this is sufficient to raise the issue.
This court in the recent case of LeBleu v. Safeway Ins. Co. of Louisiana, 01-1637, p. 4 (La.App. 3 Cir. 5/22/02): 824 So.2d 422, 425, explained that it is within the court's discretion to grant relief not requested with great specificity or extensively pled.
Further, La.Code Civ.P. art. 862 provides: "Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." (Emphasis added.) The goal of Article 862 is "to enable all litigants to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." Montet v. Lyles, 93-1724, p. 7 (La.App. 1 Cir. 6/24/94); 638 So.2d 727, 731, writ denied, 94-1985 (La.11/18/94); 646 So.2d 377 (quoting T.L. James & Co., Inc. v. Kenner Landing, Inc., 562 So.2d 914, 915 (La.1990)). A party may not receive relief under Article 862, however, if his failure to request a specific form of relief and his conduct at trial "substantially prejudice [his] adversary's presentation of a defense." Id.

After reviewing the record herein in its entirety, we agree with the trial court that the issue of agency was sufficiently raised by the pleadings. Further, the record herein makes it clear that the Defendant was aware that this issue was before the court and necessary to the Plaintiffs' theory of recovery. Accordingly, we find that the Defendant had adequate notice that the issue of agency would be adjudicated and that they incurred no prejudice from the Plaintiff's alleged failure to specifically request relief under a theory of agency.
*1182 Therefore, we find no error in the trial court's rendition of judgment based on a theory of agency.

WAS THE EVIDENCE OF RECORD SUFFICIENT TO PROVE AGENCY?
Alternatively, the Defendant asserts that the Plaintiffs failed to show the existence of an agency relationship between Starks and U.S. Fire. We note that while the Louisiana Civil Code speaks of this type of relationship as mandate at La.Civ.Code art 2989, et seq., the jurisprudence refers to the same relationship as agency.
Whether an agency relationship exists between an insurer and an intermediary is a question of fact dependent on the particular circumstances of the case. Tiner v. Aetna Life Ins. Co., 291 So.2d 774, 778 (La.1974); See, Smason v. Celtic Life Ins. Co., 615 So.2d 1079, 1084 (La.App. 4th Cir.1993), writ denied, 618 So.2d 416 (La.1993).
Kidd v. Independent Fire Ins. Co., 95-1273, p. 7 (La.App. 4 Cir. 1/19/96); 668 So.2d 406, 409-10.
However, "[a] principal/agent relationship is not presumed, but is determined from the facts surrounding the parties involved in a given transaction." Id. at p. 8.
This court in McManus v. Southern United Fire Ins., 00-1456, pp. 2-3 (La. App. 3 Cir. 3/21/01); 801 So.2d 392, 394-95, cited a summary of the law of agency:
In Cartinez v. Reliable Amusement Co., Inc., 99-333, pp. 6-7 (La.App. 3 Cir. 11/3/99); 746 So.2d 246, 250-51, writ denied, 99-3404 (La.2/4/00); 754 So.2d 235, we quoted with approval the excellent summary of the law relative to agency relationships found in Barrilleaux v. Franklin Foundation Hospital, 96,0343, pp. 6-7 (La.App. 1 Cir. 11/8/96); 683 So.2d 348, 353-54, writ denied, 96-2885 (La.1/24/97); 686 So.2d 864, where our colleagues held:
An agent is one who acts for or in place of another by authority from the latter. Oliver v. Central Bank, 26,932 p. 8 (La.App. 2nd Cir.5/10/95); 658 So.2d 1316, 1321, writ denied, 95-1469 (La.9/22/95); 660 So.2d 477; Martin Fuel Distributors, Inc. v. Trans Gulf Fuel, Inc., 496 So.2d 473, 476 (La.App. 1st Cir.), writ denied, 498 So.2d 753 (La.1986). An agency relationship may be created by express appointment of a mandatary under LSA C.C. art. 2985 or by implied appointment arising from apparent authority. Oliver v. Central Bank, 658 So.2d at 1321; Urbeso v. Bryan, 583 So.2d 114, 117 (La.App. 4th Cir.1991); Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d 336, 338-39 (La. App. 1st Cir.1990). Therefore, an agent's authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d at 339. As between principal and agent, the limit of an agent's authority to bind the principal is governed by the agent's actual authority. However, as between principals and third parties, the limit of an agent's authority to bind the principal is governed by the agent's apparent authority. Boulos v. Morrison, 503 So.2d at 3.
Implied or apparent agency exists if the principal has the right to control the conduct of the agent and the agent has the authority to bind the principal. Urbeso v. Bryan, 583 So.2d at 117. Apparent agency arises when the principal has acted so as to give an innocent third party a reasonable belief that the agent had the authority to act for the principal, Urbeso v. Bryan, *1183 583 So.2d at 117; Davidson v. Board of Trustees, State Employees Group Benefits Program, 481 So.2d 708, 711 (La.App. 1st Cir.1985), and the third party reasonably relies on the manifested authority of the agent. Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d at 339; Tate v. Hanover Insurance Company, 526 So.2d 1302, 1305 (La.App. 3rd Cir.), writ denied, 530 So.2d 569 (La. 1988). Apparent agency is established by the words and conduct of the parties and the circumstances of the case. An agency relationship may be created even though there is no intent to do so. Urbeso v. Bryan, 583 So.2d at 117; Sales Purchase Corporation v. Puckett, 417 So.2d 137, 140 (La.App. 2nd Cir.), writ denied, 421 So.2d 250 (La.1982).
In Tedesco v. Gentry Development, Inc., 540 So.2d 960, 963 (La.1989) (citations omitted) (footnote omitted), the supreme court held:
Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent. In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person. However, the third person has the same rights in relation to the principal under either actual or apparent authority. Further, apparent authority operates only when it is reasonable for the person to believe the agent is authorized and the third person actually believes this.
In this case, the determination of whether an agency relationship existed between U.S. Fire and Starks, turns on an examination of whether Starks had the apparent power to bind U.S. Fire. "The first requirement for a finding of apparent authority is that the principal ... must act to manifest the authority of the alleged agent... to an innocent third party." Spurrell v. Ivey, 25,359, p. 15 (La.App. 2 Cir. 1/25/94); 630 So.2d 1378, 1386. The testimony of Starks and of Carol Larson, an account representative with the Howalt-McDowell Agency, indicates that U.S. Fire allowed Starks to collect initial premiums, to bind coverage, and renew insurance. It is uncontested that the Venables' previous coverage from U.S. Fire had been bound by Starks and/or the Howalt-McDowell Agency, without a quote being sent or a premium being received. In direct contradiction of Starks' testimony, Carol Larson testified that quotes for the kind of insurance Venable was seeking were processed in house, rather than by U.S. Fire and that the coverage could have been bound and an endorsement issued by Howalt McDowell prior to receipt of the premium. In its reasons for judgment, the trial court evaluated the testimony and its effects as follows:
The problem I have with Mr. Starks' testimony is that, although he says he had to get a rating from the company, Ms. Larson says they had an inhouse rating system for that company, not for all companies, "for that company." Mr. Starks says he couldn't issue an endorsement inhouse; Ms. Larson says she could have for this company under this kind of policy. True it was new coverage, in the sense that it was property owner's comprehensive, if you will, as opposed to renter's or lessee's comprehensive. *1184 But I really believe that in this particular case, Mr. Starks had, at least, the apparent authority to do what Mr. Venable believed he had done, which was placed in force coverage for his building.
I believe that the insurer in this case, United States Fire Insurance Company, has to live with the fact that this was a unique kind of insurance that was promoted by one man, in particular; namely, Mr. Starks, that had been promoted for a number of years, who had a client, at least one client, Mr. Venable, who believed that he was "the man" to go to for honey producer's insurance.
They have to live with the fact that, if Ms. Larson's testimony is to be taken as true, they gave Howalt-McDowell the power to do inhouse rating for policies of this kind, and to do inhouse endorsements for policies of this kind.
"The second requirement for apparent authority is that the third person ... reasonably relied on the manifested authority of the agent." Id. at 1387. As we have stated, the Venables' previous coverages from U.S. Fire had been bound by Starks and/or the Howalt-McDowell Agency, without a quote being sent or a premium being received. The trial court, in its reasons for judgment, further stated:
The other unique factor in this case is that, in all of his dealings previously with Mr. Starks, Mr. Venable, in his businessof course, Mrs. Venable, as welldealt with situations where indeed Mr. Starks could, even by his own admission, give immediate coverage, and that was vehicular insurance, the bobcats, the vehicles, renter's insurance, renewals of insurance, certainly, he could immediately bind renewals and endorsements on existing policies.
What no one explained, or communicated to each other well, was the fact that, when property ownership became the issue, the game changed. At that point, Mr. Starks, at least, testified that he had to get a rating from the company; that he had to get a quote from the company that he was placing the insurance with; and, that he had to have approval. He had to have an application all (sic) of these things that he testified about. None of this was communicated to Mr. Venable. Mr. Venable was simply told, by whomever he talked to, which is not entirely clear whether it was Mr. Starks or Ms. Larson that he needed to send in an application, which was going to be faxed to him and I assume he received it, filled it out, sent it back, and he heard no more. I choose to believe Mr. Venable when he says he did not get a faxed quote. Everything else in Mr. Venable's business life that he testified to today would tell me that if he had gotten a quote, he would have been on the phone. He would have wanted to know "What is this?" "What does it mean?" "Why am I getting these?" "Do you need the money now?".... The one thing that he makes emphatically clear, both on his application and in his testimony, is that he wanted immediate coverage. I think that all of his subsequent actions indicate that he believed that he had immediate coverage.
. . . .
I think that Mr. Starks had the apparent authority to act as agent for United States Fire Insurance Company in this case. He gave Mr. Venable reason to believe that he was acting within that authority, and I believe that United States Fire Insurance Company cloaked him with that authority, in this case. I believe that the request was absolutely clear in everybody's mind, and that request was for coverage. I think that failure to follow up, failure to distinguish, failure to explain, failure to make *1185 sure that Mr. Venable knew what was going on, constitutes negligence.
Given the evidence of record, and the reasonable credibility evaluations made by the trial court as trier of fact, we find no error in the determination that Starks had apparent authority to bind U.S. Fire and negligently led the Venables to believe he had done so.

COMPARATIVE NEGLIGENCE
Finally and also in the alternative, U.S. Fire asserts that the trial court erred in failing to assess fault to Venable for his failure to confirm the existence of coverage on the Atkinson Road property.
Because findings of fault are factual in nature, we will not disturb a trial court's allocation of fault unless those findings were made under manifest error, which exists when there is no reasonable basis for the findings, and the findings are clearly wrong based on a review of the record in its entirety. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Faye v. State, Dept. of Transp. and Development, 97-512, p. 3 (La.App. 3 Cir. 10/29/97); 702 So.2d 1036, 1039, writ denied, 97-2974 (La.2/6/98); 709 So.2d 741.
After evaluating the evidence in this case we find no manifest error in the trial court's decision not to apportion fault to the Venables. Its reasons for judgment, as cited above, reveal the eminently reasonable basis for that finding. Further explaining its decision, the court stated:
The fine points of receiving an application, getting a quote, could not be interpreted by any lay person. Ms. Larson, interestingly, in her deposition, termed or defined the application as a "request for a quote." Now, how a man like Mr. Venable, or a woman like Ms. Venable, could know that if you called your agent of many years for coverage, and he says, "I need an application. I'm faxing it to you. Fill it out and fax it back," that that is a "request for a quote," I'll never know. I just don't see it.
Therefore, we will not disturb the trial court's determination that the Venables were not comparatively at fault in this matter.

CONCLUSION
Finding no error in the trial court's determination, we affirm the judgment in this matter. Costs on appeal are assessed to the Defendant, U.S. Fire.
AFFIRMED.