STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
06-831 consolidated with 06-832

GREGORY KENT MOROUX, ET AL.    DANIEL LOMBAS, ET AL.

VERSUS                         VERSUS

ANDRE F. TOCE, ET AL.        GREGORY K. MOROUX, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 99-5383 & 2000-1207
HONORABLE ARTHUR J. PLANCHARD, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

AFFIRMED.

Michael W. Adley
Michelle Regan Popp
Judice and Adley
P. O. Dr. 51769
Lafayette, LA 70505-1769
(337) 235-2405
Counsel for Plaintiffs/Appellants:
    Gregory Kent Moroux
    Gregory Kent Moroux, A Professional Law Corporation

**Bennett Boyd Anderson, Jr.**
**Anderson Law Office**
**P. O. Box 82008**
**Lafayette, LA 70598-2008**
**(337) 233-3366**
**Counsel for Plaintiffs/Appellants:**
    **Gregory Kent Moroux**
    **Gregory Kent Moroux, A Professional Law Corporation**

**Stacy N. Kennedy**
**Gachassin Law Firm, LLC**
**P. O. Box 80369**
**Lafayette, LA 70598-0369**
**(337) 235-4576**
**Counsel for Plaintiffs/Appellants:**
    **Gregory Kent Moroux**
    **Gregory Kent Moroux, A Professional Law Corporation**

**Randall A. Smith**
**Owen B. St. Amant**
**Smith & Fawer, LLC**
**201 St. Charles Ave., Ste 3702**
**New Orleans, LA 70170**
**(504) 525-2200**
**Counsel for Defendant/Appellee:**
    **Andre F. Toce, et al**

**Michael G. Daiy**
**P. O. Box 5009**
**Lafayette, LA 70502-5009**
**(337) 234-0896**
**Counsel for Defendant/Appellee:**
    **Andre F. Toce**

**Andre F. Toce**
**The Toce Firm, APLC**
**P. O. Box 2716**
**Lafayette, LA 70502-2716**
**(337) 233-6818**
**Counsel for Defendant/Appellee:**
    **Andre F. Toce**

**Adras Paul LaBorde Endom**
**5157 Bluebonnet Blvd**
**Baton Rouge, LA 70809**
**(225) 293-8787**
**Counsel for Defendant/Appellee:**
    **Andre F. Toce**

**John E. McElligott, Jr.**
**Christopher J. Piasecki**
**Davidson, Meaux, Sonnier & McElligott**
**P. O. Box 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**Counsel for Defendant/Appellee:**
      **Michael Wayne Adley**
      **Judice & Adley, APLC**

GREMILLION, Judge.

This matter involves a fee dispute between attorneys. The plaintiffs, Gregory K. Moroux and Gregory K. Moroux, A Professional Law Corporation, appeal the trial court's grant of summary judgment on various issues and its finding that the defendant, Andre F. Toce, did not breach an oral contract to share legal fees. For the following reasons, we affirm.

## FACTS

Toce was retained to represent numerous plaintiffs after chemicals sprayed on a cane crop drifted onto the grounds of the Green T. Lindon School, in Youngsville, Louisiana, on February 23, 1995.[1] Moroux became associated with Toce on August 22, 1996, mainly to work on the chemical drift case which involved in excess of one hundred plaintiffs. Both parties agree that the terms of his compensation were pursuant to an oral contract.

Discovery in the chemical drift case extended over five years. During that time numerous depositions were taken, experts hired and deposed, and medical information gathered. In late March 1999, Toce informed Moroux that he was forming a partnership with another attorney, Michael Daiy, effective April 1, 1999. He stated that Daiy was unhappy with the amount of Moroux's draw ($8000 per month) and that it would be decreased under the new partnership. Moroux severed his association with Toce on April 15, 1999, but continued to assist him with the representation of the chemical drift case, as it was scheduled for mediation on April 22, 1999. On that date, a partial settlement was reached between the plaintiffs and

---

[1] *Lombas v. Farm Bureau Ins. Co.*, Docket No. 95-4792-J.

1

all but one defendant. This ended Moroux's association with the suit. Thereafter, he filed an intervention in the suit seeking a portion of the legal fees. His intervention was later dismissed by the trial court.

Moroux filed the instant suit against Toce seeking to recover a portion of the attorney's fees pursuant to various theories: breach of contract, joint venture, detrimental reliance, and unjust enrichment/quantum meruit. This matter was later consolidated with *Lombas v. Gregory K. Moroux and Gregory K. Moroux, A Professional Law Corporation*, docket number 20001207, in which various plaintiffs from the chemical drift suit filed a petition seeking damages for legal malpractice against Moroux. Thereafter, Toce filed motions for partial summary judgment on the issues of breach of contract, joint venture, detrimental reliance, and unjust enrichment/quantum meruit. The trial court granted partial summary judgments on the issues of detrimental reliance, unjust enrichment/quantum meruit, and joint venture, but refused to designate these as being final, appealable judgments. The trial court later severed *Lombas v. Gregory K. Moroux and Gregory K. Moroux, a Professional Law Corporation*, from this matter for all purposes.

The matter proceeded to a trial on the merits on the issue of breach of contract. Following the hearing, the trial court held that an oral contract did exist between Moroux and Toce, but held that Moroux failed to prove that it included a share of the legal fee from the chemical drift case. It further awarded him $5000 for work he performed on the case after severing his association with Toce. This appeal followed.

2

**ISSUES**

On appeal, Moroux raises five assignments of error. He argues that the trial court erred in granting summary judgment in favor of Toce, dismissing his claims of joint venture, detrimental reliance, and unjust enrichment /quantum meruit. He further argues that the trial court erred in denying his breach of contract claim. Toce has answered the appeal and argues that the trial court erred in awarding Moroux $5000 for work performed after he severed his association with him. He further argues that the trial court erred in finding him personally liable for that amount and in assessing him with all of the court costs in this matter.

**BREACH OF CONTRACT**

Moroux argues that the trial court erred in finding no breach of contract. He claims that the trial court erred in two regards. First, the trial court held that no oral contract existed as Moroux failed to indicate a specific percentage he was to receive from the fee. Second, the trial court found a lack of evidence corroborating Moroux's claim of an oral contract to share the fee.

The party demanding performance of an obligation bears the burden of proving the obligation's existence. La.Civ.Code art. 1831. As the obligation in this instance involves an oral contract in excess of $500, Moroux must prove its existence through at least one credible witness and other corroborating evidence. La.Civ.Code art. 1846. Moroux may serve as the one credible witness, but the other corroborating evidence must come from some other source. *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So.2d 37. "The 'other corroborating circumstances' need only be general in nature; independent proof of every detail of

3

the agreement is not required." *Id.* at 58 (quoting *Kilpatrick v. Kilpatrick*, 27,241 (La.App. 2 Cir. 8/23/95), 660 So.2d 182, 185). Whether the party has satisfied his burden of proof is a question of fact subject to the manifest error rule. *Crowe v. Homeplus Mft. Housing, Inc.*, 38,382 (La.App. 2 Cir. 6/21/04), 877 So.2d 156.

Moroux testified that he became associated with Toce mainly to work on the chemical drift case due to his experience in the area of toxic torts. He stated that Toce was involved in another large suit and did not have time to devote to the chemical drift case. He testified that he handled the suit until he severed his association with Toce on April 15, 1999. However, he stated that he continued working on the case and participated in the mediation conference, after which all but one defendant settled.

Moroux claims that he and Toce agreed that he would receive a draw against the annual revenue he was expecting to generate for the firm, starting at $6000 per month. This amount was later increased to $8000 per month. However, he claims that the draw did not apply to work performed in the chemical drift case, as he and Toce agreed that he would receive a share of the fees that case generated, based on the amount of work he performed. He further stated that any monies he received from Toce were paid to his professional law corporation, even though he was listed personally on the 1099s up until October 1, 1998. Thereafter, the 1099s listed his professional law corporation as the entity being paid. In addition to the draw, Moroux further testified that Toce paid his legal malpractice insurance, and later provided him with a Mercedes Benz automobile, auto insurance, and health insurance. He stated that Toce also provided him with paralegals, a secretary, and all

4

office equipment.

Although they never specifically discussed how they would split the fee, Moroux stated that Toce once asked if he agreed to a split of twenty-five percent to the person who signed and financed the case (Toce), forty percent to the person who worked the case (Moroux), and the remaining thirty-five percent to the person who performed early work in the case (Toce). Moroux testified that he asked Toce on more than one occasion to reduce their agreement to writing, but was told that there was no need to take such a step.

Moroux presented several witnesses to corroborate his claim. His wife, Lynn, testified that Toce told her on two separate occasions that the chemical drift case would make her husband a millionaire. Maxine Vaccarella, a paralegal who worked with Moroux on the chemical drift case, testified that Toce told them that they were all going to be rich as a result of the case, that he was paying Moroux a lot, and that he was going to make a lot off the case. F. Douglas Wimberly and Lane Roy were attorneys who represented defendants in the chemical drift case. Both testified that they dealt primarily with Moroux through the first mediation hearing. None of the above witnesses, other than Moroux, had any personal knowledge of the agreement for compensation existing between Moroux and Toce.

Glenn Hebert, the medical case manager on the chemical drift case, testified that he heard Toce, on three different occasions, state that Moroux was going to make forty percent of the fee from the case. Hebert stated that once, at a meeting with Moroux and Toce in 1998, he heard Toce tell Moroux, "Just get the job done. Mr. Moroux is going to make the biggest fee he ever made in his life. He's going to

5

make 40 percent of the file." Hebert said that he later asked Moroux if this was true and that he was told that it was. The second time occurred at a hunting camp in mid-December 1998, when Hebert testified that he heard conversations between Toce and Daiy about forming a partnership. He stated that Toce told Daiy that he would sever his business relationship with Moroux so that Daiy could receive Moroux's forty percent share in the chemical drift case fee, which would be $500,000. A third time occurred at Toce's office, when Toce was mad and yelled, "God damn it, y'all get it done. You're making 40 percent on this file. Just get it done."

However, the trial court discounted Hebert's testimony because of bias as Hebert had filed an intervention in the chemical drift suit seeking money owed to him by Toce, filed a complaint against Toce with the Louisiana State Bar Association, and complained that Toce and his wife threatened him.

Toce testified that he represented the plaintiffs in the chemical drift case pursuant to contingency fee contracts. At the time that he took on the case, he stated that he was already involved in a large litigation (Texaco) and, thus, needed more associates and paralegals to carry out his business. He stated that he signed the chemical drift case in March 1995, and performed all of the work in that case in 1995 and 1996. At the time he hired Moroux, he testified that he asked him if he would risk his time and agree to accept a percentage of the fee at the end of the case. However, he stated that Moroux required a fixed income because of family obligations and they eventually agreed that he would work for a monthly salary of $6000, which was later raised to $8000 a month. Toce further testified that he told Moroux that he would give him bonuses if he would work hard and "stick with him."

6

He stated that he never promised him a percentage of the fee in the chemical drift case and only became aware that he was claiming such an interest when the intervention was filed.

Toce testified that he was in charge of the chemical drift case as he had a tremendous investment in the case. He stated that he had borrowed $850,000 for the case and had another $100,000 to $200,000 in expenses. He stated that he told Moroux and the paralegals what to do and that he was in charge of filing pleadings, suing the defendants, and in filing the motion for summary judgment. He stated that he either told Moroux what to do or performed the task himself. He said that meetings were held in the office and that he kept track of what every person was doing in the case. While Moroux was employed by his firm, Toce stated that he spent five to ten percent of his time on the chemical drift case. He stated that he also tried nine to ten jury trials during that time and still had time to oversee his practice and work on the Texaco litigation. He further stated that he paid all of the overhead for the firm, including the salaries of all employees.

Toce testified that his partnership with Daiy became effective April 1, 1999. As part of their agreement, he stated that Daiy received $500,000 from the fee generated by the chemical drift case and he received $500,000 from a fee generated in a quadriplegic case Daiy was handling. He stated that he informed Moroux of his intent to form the partnership in late March 1999, and told him that as a result his salary would decrease from $8000. He stated that Moroux severed his association in April 1999. Thereafter, the chemical drift case went into mediation and settled with all but the school board for $3,500,000. He stated that the fee generated by this

7

settlement was $1,220,303.20. He indicated that the school board eventually settled for $625,000.

Mike McCullough, Toce's former office manager, testified that Moroux was paid twice a month for his services, but that his compensation was not in the form of a draw. He further stated that any extra money earned by Moroux was due to bonuses, which were paid at Toce's discretion. He testified that Moroux never indicated to him that he was sharing in the fee from the chemical drift case.

Daiy testified that he formed a partnership with Toce on April 1, 1999. As part of their partnership agreement, he stated that he received $500,000 from Toce. He explained that this money was generated by the chemical drift case's legal fee. With regard to Moroux's compensation, Daiy stated that he had no personal knowledge regarding the agreement existing between Toce and Moroux. However, he stated that Toce never informed him that Moroux had an interest in the chemical drift case fee.

In rendering its oral reasons, the trial court stated:

> The agreement, of course, was in oral form and this agreement, of course, was consummated at the time that Mr. Moroux went to work. However, it is up to Mr. Moroux to prove any other additions of this contract in this particular case.
>
> The agreement that Mr. Moroux claims, the Court cannot accept, in view of the fact that there is no percentage that was testified to that he was to receive from this fee if he was going to participate in the fee of the Lombas case.
>
> The only testimony was from one individual, who – Mr. Hebert, who took the stand, and he said that he heard forty percent (40%) four times. The court observed Mr. Hebert and his demeanor on the stand. I also note that Mr. Moroux himself never mentioned any amount of forty percent (40%). Consequently, I cannot accept the testimony of Mr. Hebert, and I have discounted it also because it shows – it would show

8

that he had such animosity towards the defendant in this particular case.

Under Article 1846, of course, a writing can be proved by one witness and corroborating circumstances, and the Court listened intently to determine what the corroborating circumstances in this particular case were. There was no evidence presented to the Court that I could accept as being corroborating evidence to the effect that the contract as claimed by Mr. Moroux was correct.

After reviewing the aforementioned evidence, we cannot say that it was unreasonable for the trial court to find that no oral contract existed between Toce and Moroux with regard to fee sharing in the chemical drift case. Even if Moroux is not required to present evidence concerning an agreed upon percentage, there is still a lack of corroborating evidence with regard to the oral contract. All we can glean from the evidence presented was that he stood to make a lot of money once the case concluded. What remains unclear is whether the money would have been a percentage of the fee or a bonus. Without more evidence and, as the trial court's decision was based in part on a credibility determination, its finding is entitled to great deference on appeal. Accordingly, the judgment is affirmed with regard to the issue of a breach of contract.

## SUMMARY JUDGMENT

Moroux argues that the trial court erred in granting partial summary judgments in favor of Toce on the issues of joint venture, detrimental reliance, and unjust enrichment/quantum meruit.

The law pertaining to summary judgment was discussed by the Louisiana Supreme Court in its per curiam opinion in *Hines v. Garrett*, 04-0806, pp. 1-2 (La. 6/25/04), 876 So.2d 764, 765-66 (alteration in original):

9

We review a district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.

The party urging the motion for summary judgment bears the burden of proof. However, if that party will not bear the burden of proof at trial, he need only point out that the opposing party will be unable to prove his claim. He does this by noting that the opposing party will be unable to factually prove an element essential of his claim. La.Code Civ.P. art. 966(C)(2). Once this occurs, the burden shifts to the opposing party to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La.Civ.Code art. 966(C)(2). If the opposing party fails in this particular, no genuine issue of material fact exists and summary judgment is appropriate.

***Joint Venture***

In *Coffee Bay Investors, L.L.C. v. W.O.G.C. Co.*, 03-406, pp. 7-8 (La.App. 1 Cir. 4/2/04), 878 So.2d 665, 670, the law pertaining to joint venture was discussed:

> A joint venture has been defined as "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Grand Isle Campsites, Inc. v. Cheek*, 262 La. 5, 19, 262 So.2d 350, 355 (1972), citing *Daily States Publishing Company v. Uhalt*, 169 La. 893, 901, 126 So. 228, 231 (1930). Generally, the object and the motive behind a joint venture are the anticipated profits derived from a specific business enterprise. *See Hayes v. Muller,* 245 La. 356, 367, 158 So.2d 191, 195 (1963); *Williamson v. Roberts*, 103 So.2d 499, 504 (La.App. 2nd

10

Cir.1958). The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint venture is a question of law. *Grand Isle Campsites*, 262 La. at 24, 262 So.2d at 357.

The essential elements of a joint venture are generally the same as those of partnership, i.e., two or more parties combining their property, labor, skill, etc., in the conduct of a venture for joint profit, with each having some right of control. *Cajun Electric Power Cooperative, Inc. v. McNamara*, 452 So.2d 212, 215 (La.App. 1st Cir.1984), *writ denied*, 458 So.2d 123 (La.1984). Accordingly, joint ventures are generally treated by our law as a species of partnership, and governed by the law of partnerships. *Id.* For example, there is a fiduciary duty between members of a joint venture similar to that which exists between partners in a partnership. *Sutton v. Fleming*, 602 So.2d 228, 230 (La.App. 3rd Cir.1992).

Louisiana Civil Code article 2801 defines a partnership as follows:

A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.

The requisite criteria for the existence of a joint venture (and a partnership) have been defined as follows:

(1) A contract between two or more persons;

(2) A juridical entity or person is established;

(3) Contribution by all parties of either efforts or resources;

(4) The contribution must be in determinate proportions;

(5) There must be joint effort;

(6) There must be a mutual risk vis-à-vis losses;

(7) There must be a sharing of profits.

*Cajun Electric*, 452 So.2d at 215.

These criteria require findings of fact. *Tabco Exploration, Inc. v. Tadlock Pipe & Equipment, Inc.*, 617 So.2d 606, 609 (La.App. 3rd Cir.), *writ denied*, 625 So.2d 1057 (La.1993).

11

After reviewing the pertinent law and the evidence introduced in conjunction with this motion, we find that the trial court correctly granted a partial summary judgment on this issue. Moroux testified via deposition that he incurred no risks while working on the chemical drift case for Toce, as Toce financed the case, paid all office overhead, provided Moroux with secretarial staff, paid his legal malpractice insurance, provided his computer, phone, and other equipment, and paid all research expenses. Moroux further admitted that the contingency fee contract was between Toce and the plaintiffs and, although he felt that he exercised some measure of control over the case, he agreed that the ultimate authority rested with Toce. Accordingly, we find that Moroux will be unable to prove that he and Toce shared a mutual risk in the case vis-à-vis loses. Thus, we affirm the trial court's grant of a partial summary judgment on this issue.

***Detrimental Reliance***

The doctrine of detrimental reliance is found in La.Civ.Code art. 1967, which provides:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

Detrimental reliance, also known as equitable estoppel, prevents a party from reneging or taking a position contrary to his prior acts, admissions, representations, or silence. *Suire*, 907 So.2d 37. To recover pursuant to detrimental reliance, a

12

plaintiff must prove (1) a prior representation by conduct or word, (2) a justifiable reliance, and (3) a detrimental change in one's position based on that reliance. *Id.* As the supreme court stated:

> Rather, the basis of detrimental reliance is "the idea that a person should not harm another person by making promises that he will not keep." *Id.* Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment. *Id.*

*Id.* at 59 (quoting *Morris v. People's Bank & Trust Co.*, 580 So.2d 1029, 1036 (La.App. 3 Cir.), *writ denied*, 588 So.2d 102 (La.1991) (quoting A Student Symposium, *The 1984 Revision of the Louisiana Civil Code's Articles on Obligations: Detrimental Reliance*, 45 La.L.Rev. 747, 765-66 (1985)). Moreover, the doctrine of detrimental reliance is not favored by the law and all claims must be examined carefully and strictly. *May v. Harris Mgmt. Corp.*, 04-2657 (La.App. 1 Cir. 12/22/05), 928 So.2d 140.

In his affidavit, Moroux stated that he spent sixty to seventy percent of his time on the chemical drift case as a result of Toce's promise. After a settlement was reached and Toce refused to share the fee with him, Moroux stated that he relied to his detriment in the following ways: he would not have spent the majority of his time on the case, he would have focused his attention on other cases in order to increase his earnings, he would have pursued other work, he would have sought out other job opportunities, and that he could have generated approximately $250,000 to $300,000 in earnings per year.

13

In his deposition, Moroux testified that while the chemical drift case was a big incentive for him to work for Toce, financial security for his family was another important incentive. He stated that he received a monthly draw of $6000 per month, which later increased to $8000 per month. He testified that he bore none of the risk in the chemical drift case, as Toce financed it, paid all office overhead, paid his legal malpractice insurance, and provided him with a car, car insurance, and health insurance. In addition to his monthly draw, Moroux stated that he also received bonuses from Toce and obtained a personal loan of $27,000, which Toce later offset against a fee received from a case Moroux brought with him to his firm. Under questioning, Moroux admitted that no other firm had guaranteed him the amount of money he was receiving from Toce at the time he associated with him. He further admitted that he had received no such offers since severing his association with Toce.

After reviewing the evidence, we find that the trial court correctly rendered a partial summary judgment on this issue. In reviewing Moroux's deposition and affidavit, we find that there is a lack of evidence proving that he detrimentally changed his position based on his reliance that he would share in the chemical drift case fee. Although he may claim that he would have sought other job opportunities and could have generated a large amount in income, these statements, on their own, are insufficient to prove that he changed his position to his detriment, in light of the evidence relating to his monthly income, bonuses, and other incentives. Accordingly, the judgment of the trial court is affirmed on this issue.

**Unjust Enrichment/Quantum Meruit**

The doctrine of unjust enrichment, otherwise known as actio de in rem

14

verso, is codified by La.Civ.Code art. 2298, which provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

A party seeking to recover pursuant to this theory bears the burden of proving five elements:

(1) an enrichment of the defendant;

(2) an impoverishment of the plaintiff;

(3) causation between the enrichment and the impoverishment;

(4) an absence of justification or cause for either the enrichment or the impoverishment; and

(5) no other remedy available at law.

*Bieber-Guillory v. Aswell*, 98-559 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145.

The evidence reveals that the parties in the chemical drift case settled for $3,500,000, which generated a legal fee of $1,220,303.20. Based on the facts established pursuant to the issue of detrimental reliance, we find that the trial court correctly rendered a partial summary judgment with regard to unjust enrichment/quantum meruit. Although Toce was enriched to the tune of $1,220,303.20, the evidence failed to substantiate that Moroux suffered an impoverishment. Accordingly, the judgment of the trial court is affirmed on this issue.

## ANSWER TO APPEAL

In his answer to appeal, Toce argues that the trial court erred in finding

15

him personally liable to and in awarding Moroux $5000, representing work performed by him after he severed his association with him. He further argues that the trial court erred in casting him with all of the court costs in this matter.

Louisiana Code of Civil Procedure Article 862 provides, "Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." *See Venable v. U.S. Fire Ins. Co.*, 02-505 (La.App. 3 Cir. 10/30/02), 829 So.2d 1180. In this instance, Moroux's petition does contain a prayer for all general and equitable relief. Further, the evidence established that he received no further payment from Toce after severing his association with him on April 15, 1999, although continuing to work on the chemical drift case, participating in an on-site inspection, and participating in the all-day mediation on April 22, 1999. Accordingly, we find no error in the trial court's award of $5000 to Moroux for work performed on the chemical drift case subsequent to April 15, 1999.

With regard to court costs, La.Code Civ.P. art. 1920 provides that the trial court may assess court costs in any manner it considers equitable. On review, an appellate court may not modify the trial court's assessment absent an abuse of discretion. *Hazelwood Farm Inc. v. Liberty Oil and Gas Corp.*, 02-266 (La.App. 3 Cir. 4/2/03), 844 So.2d 393. In this instance, we cannot say that the trial court abused its discretion in casting Toce with all of the court costs.

Finally, Toce argues that the trial court erred in finding him personally liable to Moroux for the $5000. He claims that Toce & Daiy, L.L.C. would be the

16

proper party to owe Moroux any money due him after April 15, 1999. However, we find that this claim should properly have been brought before the trial court pursuant to peremptory exceptions of no cause of action or nonjoinder of a party. La.Code Civ.P. art. 927. As no such exception was filed prior to the submission of the case for a decision, we need not address this issue. Finding no merit in these assignments of error, the judgment of the trial court awarding Moroux $5000 is affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed equally fifty percent to the plaintiffs-appellants, Gregory K. Moroux and Gregory K. Moroux, A Professional Law Corporation, and fifty percent to the defendant-appellee, Andre F. Toce.

**AFFIRMED.**