# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-205

JILL NEECE

VERSUS

## LOUISIANA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOC., ET, AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 04
PARISH OF ACADIA, NO. 13-02181
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********
## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**GREMILLION, J., concurs in part and dissents in part, and assigns written reasons.**

                                                                                    **AFFIRMED.**

Catherine Cordes
John Links Duvieilh
Jones Walker LLP
201 St. Charles Avenue – Suite 4700
New Orleans, LA 70170
Telephone:  (504) 582-8615
COUNSEL FOR:
     Defendants/Appellants - Louisiana Horsemen's Benevolent and
     Protective Assoc. and Scott Gelner

Jennifer B. Valois
Janice Hebert Barber
Barber Law Firm
111 Mercury Street
Lafayette, LA 70503
Telephone:  (337) 232-9893
COUNSEL FOR:
     Plaintiff/Appellee – Jill Neece

**THIBODEAUX, Chief Judge.**

Scott Gelner and his insurer, the Louisiana Horsemen's Benevolent and Protective Association ("LHBPA"), (collectively, "Appellants") appeal a judgment from the Office of Workers' Compensation ("OWC") awarding a former employee, Jill Neece, workers' compensation benefits, medical expenses, penalties, and attorney fees. While exercising horses for Damien Simon, Ms. Neece was thrown from a horse and injured her back. Mr. Simon owned the horses that Ms. Neece was exercising, and housed them in stalls subleased from Scott Gelner at the Evangeline Downs Training Center ("Evangeline Downs"). Scott Gelner and the LHBPA dispute the claim and contend that Ms. Neece was never an employee of Scott Gelner or the LHBPA.

Appellants argue that no employment relationship existed between Mr. Gelner and Ms. Neece because the two had never met, Mr. Gelner did not hire Ms. Neece, Mr. Gelner did not pay Ms. Neece, and Mr. Gelner did not have the ability to fire Ms. Neece. Based on the records in evidence and Ms. Neece's testimony, the workers' compensation judge ("WCJ") ruled that Ms. Neece was an employee of Mr. Gelner and, thus, entitled to workers' compensation benefits, medical expenses, penalties, and attorney fees under the principles of detrimental reliance and agency. From that judgment, Appellants filed a timely appeal. Appellants argue that the trial court abused its discretion when it *sua sponte* raised the theories of detrimental reliance, estoppel, and agency. Appellants further argue that the trial court erred in awarding penalties and attorney fees to Ms. Neece because Mr. Gelner and the LHBPA did not act arbitrarily and capriciously in denying her workers' compensation benefits and medical expenses.

For the following reasons, we affirm the judgment of the trial court awarding Ms. Neece workers' compensation benefits, medical expenses, penalties, and attorney fees.

## I.

## ISSUES

There are three issues before the court:

1. whether the trial court erred in finding that an employment relationship existed between Jill Neece and Damien Simon pursuant to La.R.S. 23:1031;

2. whether the trial court properly raised the issues of detrimental reliance, estoppel, and agency; and

3. whether the trial court erred in awarding penalties and attorney fees.

## II.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989) The findings of the WCJ is subject to the manifest error-clearly wrong standard of review. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/96), 696 So.2d 551 (La. 7/1/97). In *Banks*, the Louisiana Supreme Court elaborated on the application of that standard:

> In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman*, 93-1530 at p.5, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120,

1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Id*. at 556.

III.

**FACTS AND PROCEDURAL HISTORY**

These proceedings arise out of an injury suffered by claimant, Jill Neece, that occurred while she was exercising horses at Evangeline Downs Training Center. Ms. Neece filed an action for workers' compensation benefits, medical treatment, medical expenses, penalties, and attorney fees against Damien Simon, Scott Gelner, and the Louisiana Horsemen's Benevolent and Protective Association. She sought a declaration that both Mr. Simon and Mr. Gelner were her employers, and, consequently she was owed workers' compensation benefits, medical expenses, penalties, and attorney fees.

Ms. Neece has been licensed as an exercise rider by the Louisiana Racing Commission since 2011. In late 2012, Ms. Neece began working as an exercise rider at Evangeline Downs, and in early January 2013, she began galloping horses for Damien Simon. On the morning of January 14, 2013, Ms. Neece was thrown from a two-year old colt that she was galloping for Mr. Simon and suffered a back injury.

Evangeline Downs is licensed as a training center by the Louisiana Racing Commission. Damien Simon, however, is not a licensed trainer. His

3

horses were stalled at Evangeline Downs through a sublease agreement with Scott Gelner.

As a licensed trainer, Scott Gelner leased ten stalls from Evangeline Downs. In violation of the Stall Lease Agreement, Mr. Gelner subleased the stalls to Mr. Simon. Section 16.1 of the Stall Lease Agreement states:

> Lessee will at all times during the term of this Lease carry and maintain, at Lessee's sole cost and expense, adequate workmen's compensation insurance, issued by the Louisiana Horsemen's Benevolent Protection Association, to cover employees engaged in the capacity of training and caring for horses in accordance with the laws of the State of Louisiana and the Rules of the Louisiana Racing Commission.

Ms. Neece was hired by Mr. Simon to exercise horses stalled under Mr. Gelner's trainer number. She was listed under Mr. Gelner's employee list and further testified at trial that she would not have agreed to exercise Mr. Simon's horses if she had known that she was not covered by workers' compensation insurance.

IV.

**LAW AND DISCUSSION**

Appellants first argue that the trial court improperly raised issues of detrimental reliance, estoppel, and agency in determining that an employment relationship existed between Jill Neece and Scott Gelner. Appellants contend that Mr. Gelner was not Ms. Neece's employer when she was injured and Appellants are, therefore, not liable to her workers' compensation benefits, medical treatment and expenses, penalties and/or attorney fees. Louisiana Revised Statues 23:1031 states, in part:

> If an employee not otherwise eliminated from the benefits of his Chapter receives personal injury by accident arising out of and in the course of his

employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.

La.R.S. 23:1031.

Here, the WCJ found liability on behalf of Mr. Gelner and the LHBPA. The record on appeal shows that Ms. Neece believed that she worked for the licensed trainer of the horses and those horses were housed at Evangeline Downs. As per the lease agreement, the stalls can only be leased by licensed trainers, who are required to carry LHBPA workers' compensation insurance. Ms. Neece testified at trial that she would not have exercised Mr. Simon's horses if she had known that workers' compensation insurance would not be available.

Based on the evidence, it was reasonable for the WCJ to infer that Ms. Neece detrimentally relied upon Mr. Simon's license, and that Mr. Simon was an agent of Mr. Gelner because he subleased and used Mr. Gelner's stalls. "[R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own inferences and evaluations are as reasonable." *Lee v. Heritage Manor of Bossier City*, 41,828, p. 8 (La.App. 2 Cir. 3/14/07), 954 So.2d 276, 282, *writ denied*, 07-736 (La. 5/18/07), 957 So.2d 157. Accordingly, we find no manifest error in the WCJ's finding.

**Judgment Beyond the Pleadings**

Appellants argue substantial prejudice based upon the trial court's reliance on elements of detrimental reliance, estoppel, and agency. Appellants argue that Ms. Neece did not allege that an employment relationship was created under theories of agency or estoppel, and because Appellants had no notice that

5

such a holding might be reached, they are substantially prejudiced by the trial court's *sua sponte* raising of these legal theories.

Louisiana Civil Code of Procedure Article 862 states:

> Except as provided in Art. 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.

La.C.C.P. Art. 862. "Under La. C.C.P. Art. 862 the trial judge may grant relief to a party as the evidence indicates and is not restricted to the relief prayed for." *Hobbs v. Fireman's Fund Am. Ins. Companies*, 339 So.2d 28, 38 (La.App. 3 Cir. 1976), *writs denied*, 341 So.2d 896 (La.1977) (citing *Desormeaux v. Inexco Oil Co.*, 298 So.2d 897 (La.App. 3 Cir.), *writ denied*, 302 So.2d 37 (La.1974)).

In *Venable v. U.S. Fire Ins. Co.*, 02-505 (La.App. 3 Cir. 10/30/02), 829 So.2d 1179, the defendant argued that the judgment rendered by the trial court was null in that it granted relief not requested in the pleadings. The appellate court noted that it was within the trial court's discretion to grant relief not requested unless, "failure to request a specific form of relief and his conduct at trial 'substantially prejudice [his] adversary's presentation of a defense.'" *Id.* at 1181 (quoting *LeBleu v. Safeway Ins. Co. of La.*, 01-1637, p. 4 (La.App. 3 Cir. 5/22/02), 824 So.2d 422, 425).

After reviewing the record in its entirety, we agree with the trial court that the issue of agency was sufficiently raised by Ms. Neece. Nothing in the record suggests that the Appellants suffered substantial prejudice. At the request of the trial court, both parties provided pretrial briefs on the employment status of Ms. Neece, Mr. Gelner, and Mr. Simon. In her pre-trial brief, Ms. Neece argued that she detrimentally relied upon the representation of Mr. Simon in stating that he

was a licensed trainer, and, therefore, she would be covered by workers' compensation insurance. Furthermore, in ruling on the motion for summary judgment, the WCJ stated that she believed that Ms. Neece relied upon the representation that Mr. Simon was licensed, and, therefore, detrimental reliance was an appropriate theory of liability. The Appellants were aware that this issue was before the court and necessary to Ms. Neece's theory of recovery. Furthermore, by failing to identify a piece of evidence that the trial court's ruling prevented them from presenting, Appellants have not illustrated substantial prejudice from a lack of notice.

**Attorney Fees and Penalties**

Failure to pay benefits in a timely manner requires the imposition of penalties and attorney fees on the employer or insurer, unless that party reasonably controverts the employee's claim. La.R.S. 23:1201(F). The question is, therefore, not whether the employer acted arbitrarily and capriciously, but whether the employer presented "sufficient factual and medical information to reasonably counter the evidence provided by the claimant." *Mouton v. Walgreen Co.*, 07-1403, p. 14 (La.App. 3 Cir. 4/2/08), 981 So.2d 75, 85 (citing *Humphrey v. Icee Distribs.*, 06-549 (La.App. 3 Cir. 11/29/06), 944 So.2d 783, *writ denied*, 07-7 (La. 3/9/07), 949 So.2d 442). "The employer must adequately investigate the claim, and the crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action." *Rivera v. M&R Cable Contractors, Inc.*, 04-985, p. 9 (La.App. 3 Cir. 12/17/04), 896 So.2d 90, 97 (quoting *Williams v. Rush Masonry, Inc.*, 98-2271, p. 9 (La. 6/29/99), 737

7

So.2d 41, 46). An award or denial of penalties and attorney fees is reviewed for manifest error. *Mouton*, 981 So.2d 75.

Here, there is nothing to suggest that the LHBPA investigated Ms. Neece's claim despite being on Mr. Gelner's work list. Her presence on the work list should have alerted the LHBPA to the possibility of employment and the employment status of Ms. Neece. On the same day as the accident, Mr. Gelner signed a statement stating that Ms. Neece was not his employee. Appellants immediately denied any employment relationship and failed to get a statement from Mr. Simon at all. As a result, we find that the WCJ did not manifestly err by granting Ms. Neece penalties and attorney fees.

**Answer to Appeal**

In her Answer to Appeal, Ms. Neece has requested additional attorney fees for work done on appeal. Rules of Professional Conduct, Rule 1.5 provides guidance for the award of attorney fees. Some of the factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; … (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; … (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

La.Rules Prof.Conduct, Rule 1.5(a)(1),(3),(4),(6)-(8). We have examined the record and, consistent with Rule 1.5, an award of $4,000 in attorney fees is appropriate.

## V.

## **CONCLUSION**

The judgment of the trial court is affirmed. Costs of this appeal are assessed to the Appellants, Louisiana Horsemen's Benevolent and Protective Association and Scott Gelner.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


16-205


JILL NEECE

VERSUS

LOUISIANA HORSEMEN'S AND BENEVOLENT
PROTECTIVE ASSOCIATION


**GREMILLION, Judge, concurring in part and dissenting in part.**

The majority has fully and accurately laid out the facts relevant to this matter. They have fairly applied the principles of detrimental alliance, estoppel, and agency. Therefore, I concur with the majority's conclusion that the employee in this matter was entitled to an award of compensation benefits and medical expenses. However, because I do not find that the employee was entitled to penalties and attorney fees, I must dissent as to that portion of the majority's opinion.

As the majority opinion properly sets forth, the employer may not be subjected to the imposition of penalties and attorney fees if that employer "reasonably controverts the employee's claim" and where the "employer had an articulable and objective reason for denying or discontinuing benefits."

That is the case here. Indeed, the majority opinion itself does a neat and efficient job of reasonably controverting the employee's claim and in articulating an objective reason for the employer's position when it states, at its outset, as follows:

"Appellants argue that no employment relationship existed between Mr. Gelner and Ms. Neece because the two had never met, Mr. Gelner did not hire Ms. Neece, Mr. Gilner did not pay Ms. Neece, and Mr. Gelner did not have the ability to fire Ms. Neece."

The record of this matter establishes that every point in that argument is accurate. Logic requires the conclusion that, since Mr. Gelner and Ms. Neece never met, there is no way that Gelner did or said anything that Ms. Neece detrimentally relied upon. Rather, what Ms. Neece detrimentally relied upon were lies told by a notably absent third party.

Yes, it is true that the defendants herein were saddled (pun intended) with liability based upon the intricacies of a sublease and the inner workings of the Louisiana Racing Commission. Yet, I find that the most basic facts here and the most foundational equities here favor the employer, and not the employee.

This court's impulse should be to express sympathy to Mr. Gelner for his having been caught in a bad situation. We should not make his bad situation worse by forcing him to pay penalties and attorney fees for his alleged maltreatment of an employee whom he did not know existed.